Annick M. Persinger (CA Bar No. 272996)
*apersinger@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808

Katherine M. Aizpuru (*pro hac vice to be filed*)
*kaizpuru@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, Northwest, Suite 1010
Washington, District of Columbia 20006
Telephone: (202) 973-0900

*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA PERJANIK, SAMUEL MCCLAIN, and VICTORIA TULSIDAS on behalf of themselves and all others similarly situated, | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | **DEMAND FOR JURY TRIAL** |
| v. | |
| PROCTORU, INC. D/B/A MEAZURE LEARNING, | |
| Defendant. | |

Plaintiffs Laura Perjanik, Samuel McClain, and Victoria Tulsidas, individually and on behalf of all others similarly situated, by and through counsel, hereby bring this action against ProctorU, Inc. d/b/a Meazure Learning ("Meazure"). Plaintiffs' allegations herein are based upon personal knowledge and belief as to their own acts and upon the investigation of their counsel, and information and belief as to all other matters.

## NATURE OF THE CASE

1.      Defendant Meazure had one job: to administer the February 2025 California Bar Examination (the "CA Bar Exam" or "Exam") to thousands of test-takers who were required to pay Meazure to use its software—the Meazure Exam Platform—during the Exam. *See* Exhibit A (February 2025 Bar Exam FAQs). But Meazure failed spectacularly in its task to administer the Exam because its Platform crashed and continually malfunctioned, disrupting the Exam. As a result of the total technical breakdown that Meazure caused, the Exam was a disaster for test-takers who were traumatized, who had their career ambitions delayed, and who paid Meazure a fee for a defunct Platform.

2.      The CA Bar Exam, offered by the State Bar of California ("State Bar") every February and July, is one of the most important and stressful milestones that aspiring California lawyers must pass. It is one of the country's most difficult bar exams. And law graduates who hope to practice law in California must take and pass the Exam as California does not have reciprocity with other state bars. As a result, law graduates who fail the CA Bar Exam cannot earn livelihoods as lawyers in California.

3.      The vast majority of test takers take the CA Bar Exam using a computer rather than by hand as handwriting is slower and thus a disadvantage on the timed Exam. For the February 2025 Exam, the State Bar contracted with Meazure for the remote proctoring software that test-takers were required to use to complete the exam on a computer. Applicants who do not wish to handwrite the exam are required to use Meazure's Platform and to pay a fee to Meazure to take the test. *See* Exhibit A.

4.      Meazure knew well in advance how many thousands of applicants would be taking the Exam, as thousands sign up for the CA Bar Exam each February and each July. Further, applications for the Exam were due by November 1, 2024.

5.      Meazure also knew how important the CA Bar Exam is for test takers. It understands that the expenses associated with the test are significant, and that failure to pass the bar will prevent law graduates from working as attorneys within the state of California.

6.      Plaintiffs and Class Members invested significant time and money to prepare for the Exam. They spent hundreds of hours studying, they invested in expensive test-preparation classes, and they paid hefty fees to both the State Bar and to Meazure to take the Exam using its Platform. They also spent time and money traveling to testing locations and taking practice tests to familiarize themselves with the Platform.

7.      Despite the tremendous stakes associated with the CA Bar Exam, on February 25 and 26, 2025, Meazure's testing software crashed repeatedly during the Exam. CA Bar Exam applicants, including Plaintiffs and Class Members, experienced severe technical breakdowns that in many instances prevented them from accessing and completing the test. Plaintiffs and Class Members faced server crashes, instructions to uninstall and reinstall required software, inability to open and run required programs on computers that met technical requirements, malfunctioning copy/paste functionality that prevented users from entering answers, and lack of access to the exam questions, among other things. The CA Bar Exam is a timed test, and these prolonged and repeated problems interfered with and in many instances impeded their ability to complete or pass the test.

8.      Meazure's testing software crashed because it had insufficient infrastructure and/or lack of servers and server space to process the foreseeable number of exam takers. Meazure failed to design, maintain, and/or improve the infrastructure of the exam software to sufficiently and adequately service Plaintiffs and Class Members who had no choice but to pay Meazure's fee to take the Exam on a computer.

9.      As a result of Meazure's failure to have a properly functioning software available for applicants, Plaintiff and the Class did not receive what they paid for—working test software that would let them complete one of the most important tests of their careers.

10.      Plaintiffs sat for the CA Bar Exam and suffered injury from these technical failures. Plaintiff seeks monetary redress and injunctive relief for themselves and the proposed Class who were injured when the February 2025 CA Bar Exam fell apart due to Meazure's failures.

## THE PARTIES

11.    Plaintiff Laura Perjanik is a citizen and resident of California.

12.    Plaintiff Samuel McClain is a citizen and resident of California.

13.    Plaintiff Victoria Tulsidas is a citizen and resident of California.

14.    Defendant ProctorU Inc. d/b/a Meazure Learning is a Delaware corporation with a principal address at 7901 Jones Branch Drive, Suite 330, McLean VA 22012 and a California office located at 3687 Old Santa Rita Road, Suite 202, Pleasanton CA 94588.

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual class members exceed the sum or value of $5,000,000.00, exclusive of interest and costs; there are more than 100 putative class members; and at least one putative class member is from a state different from the Defendant.

16.    This Court has personal jurisdiction over Defendants because it conducts substantial business in this District; and a substantial part of the acts and omissions complained of occurred in this District.

17.    Venue is proper in this judicial district under 28 U.S.C § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## COMMON CLASS ALLEGATIONS

### A.    The CA Bar Exam

18.    The CA Bar Exam is one of the country's most difficult bar exams but it is a requirement for the majority of law graduates who hope to practice law in the State of California. Law graduates who have not passed the CA Bar Exam cannot work as attorneys in the State.

19.    The CA Bar Exam is a two-day exam consisting of five one-hour essays testing California law, one 90-minute performance test, and 200 multiple-choice questions. On day one of the test, applicants write three of the essays in the three-hour morning session and two essays plus the performance test in the three-and-a-half hour afternoon session. The second day consists of the multiple choice questions.

20.     On February 25, 2025, approximately 5,600 would-be California lawyers sat for the California bar exam—the vast majority using Meazure's Platform.

**B.    Less than a year in advance, Meazure rushed to deploy software to establish itself as the sole vendor responsible for proctoring a new remote exam format for the CA Bar Exam.**

21.     Prior to the February 2025 Exam, the CA Bar Exam has historically been administered in large convention centers across the state.

22.     The February 2025 Exam was the first iteration of a new exam format that allowed remote participation, including from out of state. The new format was announced in mid-2024, created by the State Bar in partnership with Kaplan Exam Services, LLC, and administered by Meazure.[1].

23.     The State Bar and Meazure fast-tracked the new exam format, claiming that the new format would save as much as $3.8 million annually. Rather than carefully designing and releasing functioning software, Meazure rushed to deploy software that was not ready to accommodate the foreseeable number of test-takers who would use computers to take the February 2025 Exam.

**C.    Applicants were required to use Meazure's platform to take the exam on a computer.**

24.     While applicants for the February 2025 Bar Exam could choose whether to handwrite the exam or take it on a computer, the vast majority of applicants take the exam using a computer because it is easier and faster to type written answers than to write them by hand. For all but a few applicants who elect to take the exam using handwriting, taking the exam by hand would confer a significant disadvantage.

25.     If applicants do not want to take on the disadvantage of using handwriting, for the Exam, applicants were required to use Meazure's remote proctoring software to complete the test. In other words, applicants taking the exam using a computer had no choice but to use Meazure's Platform and to pay Measzure's fee—as test takers were not give any options other than Meazure's Platform to use to take the test on a computer. Applicants did not have the choice of other remote proctoring software or the option to type the exam without using Meazure's Platform. Remote applicants could use their own

---

[1] https://www.reuters.com/legal/government/california-finalizes-deal-give-its-own-bar-exam-2024-08-14/

computers that met the technical requirements for Meazure's platform, while in-person applicants were required to use a desktop computer provided by Meazure.

26.    In its FAQ, the State Bar identifies Meazure Learning as "the vendor responsible for delivering and proctoring the exam," details Meazure's role, includes links to Meazure's online proctoring FAQ "including details on scheduling and what to expect on exam day," provides information for contacting Meazure, and relays instructions directly from Meazure to test takers. See Exhibit A.

27.    In its role as the vendor responsible for delivering and proctoring the Exam, the FAQ explains that Meazure would offer in-person testing facilities in states within the Pacific and Mountain time zones, or a fully remote exam process. Meazure Learning was also responsible for sending emails to applicants to schedule their exam session, to set up their Meazure Learning account, to access the tutorial for the Platform, and with to provide information on Exam day procedures and policies. If an applicant wanted to change their test center, the applicant was also required to contact Meazure.

28.    Examinees testing remotely were also required to take a mock exam using the Meazure Learning exam Platform in advance of the exam, between January 12 and 23, 2025.

29.    On exam day, Meazure promised applicants that its platform would include, for the essay and multiple choice portions of the exam, "a single-color highlighter, digital notepad, timer, spell check, copy-and-paste functionality (shortcuts such as Ctrl+C and Ctrl+V will be available), strikethrough functionality . . . Text from the question stem or fact pattern can be copied and pasted into the response field. Text written in the digital notepad can also be copied and pasted into the response field." Exhibits A and B.

30.    Meazure also promised that the Meazure Exam Platform would include, for the performance test, "a resource packet in a separate tab with features such as search functionality and bookmarks for easy navigation," "single color highlighter functionality," "text annotation and comment features," "a tagging system to help organize notes," "the ability to copy and paste text from the materials into the response field," and "spell check."

**D.    Meazure knew in advance how many people were planning to take the February Exam and raked in profits from Plaintiffs and the Class.**

31.    Meazure knew well in advance how many applicants would be sitting for the February 2025 exam. Applications were due by November 1, 2024.

32.    Applicants were also required to schedule their exam session with Meazure directly, so that Meazure could "ensure they have the sufficient number of seats, proctors, and technical support for the exam." Meazure also corresponded with test takers in advance to prepare to use Meazure's software on exam day.

33.    Meazure raked in cash from the over 5,600 applicants who sought to sit for the February 2025 exam as test takers using computer were required to pay Meazure a fee.[2] Applicants taking the February 2025 Exam also paid fees to the State Bar to sit for the exam. Applicants who submitted late applications had to pay additional fees.

**E.    As the test date grew closer, problems emerged with Meazure's software.**

34.    In spite of the significant stakes, Meazure quickly became aware of technical problems with its Platform in advance of its planned use as the new remote exam format introduced for the first time for the February 2025 Exam.[3] In advance of exam-day, some applicants reported having their site reservations abruptly canceled with no explanation, while others reported receiving conflicting information about testing rules, deadlines, and procedures. Other applicants said they were assigned to test sites hours from their homes. Applicants reported testing glitches in the software. Although remote applicants were required to take a mock exam, applicants complained that they were unable to complete the mock exam, had to wait hours to take it, or were kicked out of the exam randomly with no explanation.[4]

---

[2] See Ex. A ("Which examinees are required to pay the laptop fees? Examinees who are testing remotely and in-person on a computer or laptop are required to pay the laptop fees. These examinees will be accessing the Meazure Learning platform, and as such, must pay for the licensing software. Examinees who require hand-writing the exam are not required to pay the laptop fees.").

[3]    https://www.reuters.com/legal/legalindustry/californias-new-bar-exam-hits-early-snags-examinees-report-2025-01-31/

[4] https://abovethelaw.com/2025/01/the-california-bar-exam-is-a-disaster-again/

35.     Meazure knew of these "technical issues and communication lapses" that "distracted applicants from their studies and created confusion."[5]

36.     Yet Meazure failed to address the myriad technical issues that plagued the rollout of the exam.

37.     On February 13, 2025, just over ten days before the Exam, the State Bar issued a communication to applicants apologizing for "how the administration of the February 2025 bar exam has been rolled out" and offering refunds for applicants who were willing to withdraw from the February 2025 exam and instead take the exam in July.

38.     That offer was cold comfort to applicants who had been studying and preparing for the February exam, which was just days away, and who could not or did not wish to wait until July to take the exam (and November 2025 or later to be admitted).[6]

39.     Days before the exam was scheduled, Meazure had still failed to rectify these serious issues. Knowing that applicants would likely fail this crucial test because of Meazure's inadequate response to the problems with its testing platform, the State Bar offered a fee waiver to applicants to retake the exam in July.[7] Again, this offer was inadequate because retaking the test in July would require another serious investment of time and money to prepare for the test, not to mention delaying the start of careers as California lawyers and the emotional distress of failing the February exam.

40.     On February 23—two days before the exam—Meazure still hadn't fixed its software. The State Bar acknowledged "receiving reports of issues in the Meazure Learning platform affecting the ability to type into the answer window, use backspace/delete, and cut and paste. Meazure has informed us that these issues have been resolved."

41.     That representation was false, as the issues were not resolved.

---

[5]     https://taxprof.typepad.com/taxprof_blog/2025/02/feb-california-bar-exam-is-in-shambles-free-july-exams-offered-to-all-5600-registrants-if-they-bail-or-fail.html

[6]  https://taxprof.typepad.com/taxprof_blog/2025/02/february-california-bar-exam-is-in-disarray-refunds-offered-to-all-5600-test-takers.html

[7]     https://www.reuters.com/legal/government/california-bar-exam-failers-get-free-retakes-amid-testing-mess-2025-02-24/.

42.    Meazure acknowledged further that the spellcheck functionality "was not functioning properly" and was causing additional problems with the software. Rather than fix the problems, Meazure turned the promised spellcheck feature off.

**F.    The February 2025 CA Bar Exam was an unmitigated disaster because Meazure's Platform crashed and continually malfunctioned.**

43.    Meazure did not fix its software by the weekend of the Exam. And for test-takers, the consequences were disastrous

44.    Thousands of test-takers saw their hopes of passing the CA Bar Exam dissolve as Meazure's test platform crashed, and crashed, and crashed again. The exam software simply did not work.

45.    Many applicants reported that the test platform froze, shut down randomly, and displayed error messages. On a time test, these malfunctions were devastating because they ate into applicants' ability to complete the exam within the time alotted.

46.    Test-takers were unable to use the copy-paste function, meaning that if they typed an exam answer outside the test software and attempted to paste it into the software, as Meazure promised they could, their answers would not transfer in and they were forced to spend valuable test-taking time retyping answers. On a timed test, this malfunction was devastating. Plaintiffs and the Class Members were also unable to access the highlighter, notepad, timer, spell check, packets, bookmark navigation, annotation and comment feature, tagging system, and other promised features.

47.    Online, test-takers shared their agonized experiences:

    a.    One user reported receiving an error message saying that the Meazure software "was under heavy load (queue full)" and that "too many people are accessing this website at the same time."[8] Commenters and other posters that they were receiving the same message.[9]

    b.    "Yes I'm gonna cry nothing saved for me."[10]

---

[8]https://www.reddit.com/r/CABarExam/comments/1iyzsds/hey_meazure_what_tf_do_u_mean_theres_too_many/

[9]https://www.reddit.com/r/CABarExam/comments/1iyzvax/thxsomuch_anybody_else_experiencing_crash/

[10]https://www.reddit.com/r/CABarExam/comments/1iyzvax/comment/meyt3mt/?utm_source=share&utm_medium=web3x&utm_name=web3xcss&utm_term=1&utm_content=share_button

CLASS ACTION COMPLAINT

c.  "Its not even opening!!!"[11]

d.  "I was scheduled to take the exam at 8:00 am. It is now 9:00 am. I never got to start. My proctors kept disconnecting with me. … I also got a malware blocked and moved to trash notification. … I am disheartened and I'm really trying to not cry."[12]

e.  "On 142 I got a message saying my answers were not being saved. Then I got the connection lost and it shut me down. I.had 8 questions left. There's no way to pass this missing AT least 8. Proctor guy said "We are currently experiencing some technical difficulties with the testing site. Thanks for your patience!""[13]

f.  "I'm an hour behind my scheduled start time with no fix in sight"[14]

g.  "I've taken 3 bar exams now. This wasn't just the worst bar exam experience. Maybe the worst experience of my entire life. Period. Instead of feeling relief or joy after finishing that Guantánamo gauntlet I found myself with tears running down my face walking back to my car. Legit traumatized, shaky, labored breathing, detached, emotions all over the place,…tf just happened to me was I in a fucking car accident !? Hours of stressful waiting eating up valuable energy and focus needed for the exam, IT IS NOT ENOUGH TO OFFER RETAKES. IT IS HEINOUS TO TAKE MILLIONS OF DOLLARS FROM US AND PUT US THRU WHAT JUST HAPPENED. … No copy paste, LIE from the bar Apparently some people could. Some couldn't. The proposed solution is to do it again? Are you fucking outta your mind ? Yall fucked this up, NOT US WE DID OUR JOB."[15]

h.  "Section three of the exam started 15 minutes late after the screen said that the "queue was too large". Neither support, nor my proctor, communicated with me during this entire time, despite

---

[11] https://www.reddit.com/r/CABarExam/comments/1iyzvax/comment/meyuc9t/?utm_source=share&utm_medium=web3x&utm_name=web3xcss&utm_term=1&utm_content=share_button

[12] https://x.com/barexamtutor/status/1894456323799941141.

[13] https://www.reddit.com/r/CABarExam/comments/1iyzvax/comment/meyv4o6/?utm_source=share&utm_medium=web3x&utm_name=web3xcss&utm_term=1&utm_content=share_button

[14] https://x.com/fromkiara/status/1894466713887855100

[15]          https://www.reddit.com/r/CABarExam/comments/1iz96ce/whos_angry/?share_id=-rcEl8z4zaQtVEcKgywLF&utm_medium=ios_app&utm_name=iossmf&utm_source=share&utm_term=10

my pleading for a response, until they simply told me to hit refresh. My anxiety and panic were incredibly overwhelming as I tried to get back into my academic headspace."

i.  "I received several notifications saying « ANSWERS NOT SAVED » while working on my essays yesterday, and now I'm beginning to wonder … WHAT IF ONLY PART OF MY ESSAY WAS SAVED / SUBMITTED? NOT THE FULL ESSAY?? 😭😭😭"[16]

j.  "Today felt like a bear attack. My exam lost connection to the servers at least 20+ times. My screen would freeze, my answers would not save, my timer would continue to run. I'm fearful that my answers did not upload properly. I kept messaging my proctor, but it was utter chaos for what felt like an unbearable amount of time. When the exam would reconnect, I had only 30 seconds to read the question before it would freeze again. When it came back, I'd scramble to find my place and try to read or answer the question. This vicious cycle continued, making the experience truly miserable. I don't believe these conditions accurately reflected my knowledge of the material."[17]

k.  "This was an utterly botched exam that fails every standard of professionalism—A) the legal profession, B) the State of California, and C) literally any exam administration on the planet. High school tests get handled better than this mess. We all deserve a refund, pass or fail, because this fiasco is basically a f***ing breach of contract, AT MINIMUM. This is absolutely not what we paid for."[18]

---

[16] https://www.reddit.com/r/CABarExam/comments/1iz99i3/i_received_several_notifications_saying_answers/?share_id=hKIRiZioYoBp1e9cMVxjF&utm_content=1&utm_medium=ios_app&utm_name=ioscss&utm_source=share&utm_term=10

[17] https://www.reddit.com/r/CABarExam/comments/1izaqzr/today_felt_like_a_bear_attack/?share_id=H75lfBm-zU_V_ocj2gooJ&utm_content=2&utm_medium=ios_app&utm_name=ioscss&utm_source=share&utm_term=10

[18] https://www.reddit.com/r/CABarExam/comments/1iyb8p8/we_all_deserve_refunds/

CLASS ACTION COMPLAINT

## PLAINTIFFS' FACTUAL ALLEGATIONS

### Plaintiff Laura Perjanik

48.     Plaintiff Laura Perjanik registered for the February 2025 CA Bar Exam. She opted to take the exam remotely using her personal computer, which met the technical requirements for the Meazure Exam Platform.

49.     Ms. Perjanik spent significant time and money preparing for the exam.

50.     Ms. Perjanik paid money to download and use Meazure's Meazure Exam Platform to take the February 2025 CA Bar Exam.

51.     The Meazure Exam Platform did not function as promised.

52.     On the first day of the test, shortly after Ms. Perjanik logged in for the test and began completing the three one-hour essays, Meazure's software began to crash and malfunction.

53.     Ms. Perjanik was unable to access the first essay until four hours after her allotted start time because the Meazure Exam Platform was not functioning. Then, it took Ms. Perjanik six hours to complete one written essay because Meazure's software repeatedly crashed. Ms. Perjanik contacted her online proctors, who told her to contact tech support. But Meazure's tech support told her to contact the online proctors. Again and again, she toggled back and forth between the online proctors and tech support, without any resolution.

54.     Ms. Perjanik's stress was overwhelming. She was crying, in tears because she had not been able to finish anywhere near the required essays within the allotted time due to the malfunctioning exam software.

55.     Because of Meazure's test software did not work, Ms. Perjanik was prevented from completing the essay portion of the exam.

56.     On the second day of the exam, Ms. Perjanik attempted to complete the multistate 200-question multiple choice portion of the test. But she encountered the same difficulties including constant interruptions and connectivity issues that repeatedly disconnected her from the testing platform.

57.     Because the test software repeatedly crashed, Ms. Perjanik could not access the highlighter, notepad, copy-paste function, timer, spell check, packets, bookmark navigation, annotation and comment feature, tagging system, and other promised features.

58.    Ms. Perjanik was deprived of the benefit of the fees that she paid in exchange for the opportunity to take a functioning test for admission to the State Bar. She was harmed when Meazure's software prevented her from completing the exam as planned.

59.    Ms. Perjanik reasonably relied upon Meazure's promises about its software's utility, namely that Meazure would allow Ms. Perjanik to complete the exam and upload her responses timely and provide features including highlighter, notepad, copy-paste function, timer, spell check, packets, bookmark navigation, annotation and comment feature, tagging system, and other promised features. Ms. Perjanik also relied on Meazure's omissions, namely, that the Meazure Exam Platform does not work. But for these misrepresentations and omissions, Ms. Perjanik would not have paid money to download and use the Meazure Exam Platform.

60.    Ms. Perjanik still wishes to become a licensed attorney practicing in California and, thus, would retake the Exam and hopes that she could trust that Meazure would fix its software and offer a functional test platform in the future.

**Plaintiff Victoria Tulsidas**

61.    Plaintiff Victoria Tulsidas registered for the February 2025 CA Bar Exam. She opted to take the exam in person using a computer provided by Meazure in person at a testing site.

62.    Ms. Tulsidas paid money to use Meazure's Meazure Exam Platform on a computer provided by Meazure to take the February 2025 CA Bar Exam.

63.    The Meazure Exam Platform did not function as promised.

64.    During the first day of the test, the Meazure Exam Platform lagged when Ms. Tulsidas was trying to type. The copy-paste function did not function. And during the third essay, the Meazure Exam Platform froze so that she could not continue adding her response. Ms. Tulsidas sought help from the in-person proctor but the proctor was unable to solve the problem. So, Ms. Tulsidas was forced to switch her laptop out in the middle of the exam. All of these delays ate into the time that Ms. Tulsidas was allotted to complete the exam, and as a result, she missed some important issues in her answer.

65.    After the lunch break, the copy-paste function still did not work and as a result she was forced to memorize parts of the exam questions that she could have otherwise pasted into the answer box for ease of access. The copy-paste function also did not work for the performance portion of the test.

66.     On the second day, the Meazure Exam Platform crashed, causing a forty-minute delay to the start of the exam. At question 112, the Meazure Exam Platform crashed again.

67.     Because the test software repeatedly crashed, Ms. Tulsidas could not access the highlighter, notepad, copy-paste function, timer, spell check, packets, bookmark navigation, annotation and comment feature, tagging system, and other promised features.

68.     Ms. Tulsidas was deprived of the benefit of the fees that she paid in exchange for the opportunity to take a functioning test for admission to the State Bar. She was harmed when Meazure's software prevented her from completing the exam as planned.

69.     Ms. Tulsidas reasonably relied upon Meazure's promises about its software's utility, namely that Meazure would allow Ms. Tulsidas to complete the exam and upload her responses timely and provide features including highlighter, notepad, copy-paste function, timer, spell check, packets, bookmark navigation, annotation and comment feature, tagging system, and other promised features. Ms. Tulsidas also relied on Meazure's omissions, namely, that the Meazure Exam Platform does not work. But for these misrepresentations and omissions, Ms. Tulsidas would not have paid money to download and use the Meazure Exam Platform.

70.     Ms. Tulsidas still wishes to become a licensed attorney practicing in California and, thus, would retake the Exam and hopes that she could trust that Meazure would fix its software and offer a functional test platform in the future.

**Plaintiff Samuel McClain**

71.     Plaintiff Samuel McClain registered for the February 2025 CA Bar Exam. He opted to take the exam in person using a computer provided by Meazure.

72.     Mr. McClain spent significant time and money preparing for the exam.

73.     Mr. McClain paid money to use Meazure's Meazure Exam Platform to take the February 2025 CA Bar Exam.

74.     The Meazure Exam Platform did not function as promised. During the first day of the test, Mr. McClain had no ability to copy/paste during the performance test.

75.     Mr. McClain was also disrupted because other applicants were having technical difficulties. Other students complaining to proctors about the Meazure Exam Platform's malfunctioning disturbed and disrupted his test-taking experience as he was attempting to write the exam.

76.     During the second day of the exam, the Meazure Exam Platform did not let Mr. McClain login and caused him to start the exam 40 minutes late. After the lunch break, Meazure's proctors yelled at test-takers. At the 105-minute mark, Mr. McClain's computer displayed a prompt stating that none of his multiple choice answers were being saved and then the entire program shut down. An hour later, the whole network rebooted.

77.     Mr. McClain suffered stress and anxiety because of the Meazure Exam Platform's malfunctioning.

78.     Mr. McClain was deprived of the benefit of the fees that he paid in exchange for the opportunity to take a functioning test for admission to the State Bar. He was harmed when Meazure's software prevented him from taking the exam as planned.

79.     Mr. McClain reasonably relied upon Meazure's promises about its software's utility, namely that Meazure would allow him to complete the exam and upload his responses timely, and provide features including highlighter, notepad, copy-paste function, timer, spell check, packets, bookmark navigation, annotation and comment feature, tagging system, and other promised features. Mr. McClain also relied on Meazure's omissions, namely, that the Meazure Exam Platform does not work. But for Meazure's misrepresentations and omissions, Mr. McClain would not have paid money to download and use the Meazure Exam Platform.

80.     Mr. McClain still wishes to become a licensed attorney practicing in California and, thus, would retake the Exam and hopes that he could trust that Meazure would fix its software and offer a functional test platform in the future.

## CHOICE OF LAW ALLEGATIONS

81.     Because this Complaint is brought in California, California's choice of law regime governs the state law allegations in this Complaint. Under California's governmental interest/comparative impairment choice of law rules, California law applies to the claims of all Class members, regardless of their state of residence or state of purchase.

82.    Although there is no true conflict that should weigh in favor of application of another state's law, because the CA Bar Exam governs the admission of lawyers to practice in California, California also has a substantial connection to, and materially greater interest than any other state in the rights, interests, and policies involved in this action.

83.    Nor would application of California law to Meazure and the claims of all Class members be arbitrary or unfair. Rather, since all Class members sought admission to the CA Bar, and took the CA Bar Exam in California, application of the California law to Meazure, and the Class members' claims ariaing from administration of the CA Bar Exam is appropriate.

## CLASS ACTION ALLEGATIONS

84.    Plaintiffs bring this suit as a class action on behalf of themselves and on behalf of all others similarly situated pursuant to Federal Rule of Civil Procedure 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of the provisions of Rule 23.

85.    Plaintiffs seek to represent the following <u>Nationwide Class</u>: **All persons who used the Meazure Exam Platform to take the February 2025 California Bar Examination.**

86.    The Nationwide Class will be referred to collectively as the "Class."

87.    ***Numerosity:*** Members of the Class(es) are so numerous that joinder of all members is impracticable. Approximately 5,600 individuals sat for the February 2025 California Bar Exam.

88.    ***Commonality:*** This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members. These common legal and factual questions include, but are not limited to, the following:

    a.    Whether Meazure's test software malfunctioned;

    b.    Whether Meazure engaged in the misrepresentations and omissions alleged herein;

    c.    Whether Meazure breached express or implied contracts with Plaintiffs and the Class Members;

    d.    Whether Meazure's conduct was negligent;

    e.    Whether Plaintiffs and the other Class Members have been harmed by Meazure's conduct as alleged herein;

f.   Whether Meazure was unjustly enriched by its deceptive practices; and

g.   Whether Plaintiffs and the Class are entitled to equitable or injunctive relief.

89.     ***Typicality***: Plaintiffs' claims are typical of those of the other Class Members because, *inter alia*, all members of the Class(es) were injured through the common misconduct described above and were subject to Meazure's unfair and unlawful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class(es).

90.     ***Adequacy of Representation:*** Plaintiffs will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiffs seek no relief that is antagonistic or adverse to the other Class Members and the infringement of the rights and the damages they have suffered are typical of other Class Members. Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously.

91.     ***Superiority:*** Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporate defendants. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical.

92.     The nature of this action and the nature of laws available to Plaintiffs and the Class make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the Class Members for the wrongs alleged because Meazure would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources. Although Plaintiffs and Class Members paid a high price point to take the exam, the costs of individual suits could unreasonably consume the amounts that would be recovered. Further, proof of a common course of conduct to which

Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each member of the Class to recover on the cause of action alleged, and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

93.    Plaintiffs reserve the right to modify or amend the definition of the proposed Class and (alternative) state classes before the Court determines whether certification is appropriate and as the parties engage in discovery.

94.    The class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the number and nature of common questions of fact and law, multiple separate lawsuits would not serve the interest of judicial economy.

95.    Individual litigation of the claims of all Class Members is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class Members are likely in the millions of dollars, the individual damages incurred by each Class Member resulting from Meazure's wrongful conduct are too small to warrant the expense of individual suits. The likelihood of individual Class Members prosecuting separate claims is remote, and even if every Class Member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual Class Members do not have a significant interest in individually controlling the prosecution of separate actions, and the individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. A class action in this matter will avoid case management difficulties and provide multiple benefits, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of each Class member, all by way of the comprehensive and efficient supervision of the litigation by a single court.

96.    Notice of a certified class action and of any result or resolution of the litigation can be provided to Class Members by first-class mail, email, or publication, or such other methods of notice as deemed appropriate by the Court.

97.    Plaintiffs do not anticipate any difficulty in the management of this litigation.

**FIRST CLAIM FOR RELIEF**

**BREACH OF EXPRESS WARRANTY UNDER CALIFORNIA LAW**

**Cal. Unif. Com. Code § 2313**

**(By All Plaintiffs on Behalf of the Nationwide Class)**

98.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

99.    Meazure expressly warranted that Class Members could "tak[e] an exam on the Meazure Exam Platform." Meazure also expressly warranted that the Meazure Exam Platform would include, for the essay component and multiple choice questions, "a single-color highlighter, digital notepad, timer, spell check, copy-and-paste functionality (shortcuts such as Ctrl+C and Ctrl+V will be available), strikethrough functionality (limited to the question stem). Text from the question stem or fact pattern can be copied and pasted into the response field or the digital notepad. Text written in the digital notepad can also be copied and pasted into the response field." Meazure also expressly promised that the Meazure Exam Platform would include, for the performance test, "a resource packet in a separate tab with features such as search functionality and bookmarks for easy navigation," "single color highlighter functionality," "text annotation and comment features," "a tagging system to help organize notes," "the ability to copy and paste text from the materials into the response field," and "spell check." These express warranties became part of the basis of the bargain between all Plaintiffs and Class Members and Meazure.

100.    In fact, the Meazure Exam Platform did not allow Class Members to take their exam because the Meazure platform repeatedly crashed and was plagued with other problems interfering with the ability to take the test. Plaintiffs and the Class Members were also unable to access the highlighter, notepad, timer, spell check, copy-past functionality, packets, bookmark navigation, annotation and comment feature, tagging system, and other promised features.

101.    Plaintiffs and Class Members notified Meazure of the breaches within a reasonable time, and/or were not required to do so because affording Meazure a reasonable opportunity to cure its breach of warranty would have been futile. Meazure knew of the defects in its software well in advance yet chose to conceal them and claim they were resolved in advance of the test.

102.     As a direct and proximate cause of Meazure's breach, Plaintiffs and Class Members paid for test software they would not have otherwise purchased, overpaid for their test software, and did not receive the benefit of their bargain. Plaintiffs and Class Members have also incurred and will continue to incur costs associated with likely failing the exam, as Meazure knew was likely.

103.     Plaintiffs and Class Members are entitled to legal and equitable relief against Meazure, including damages, consequential damages, specific performance, attorney fees, costs of suit, and other relief as appropriate.

**SECOND CLAIM FOR RELIEF**
**BREACH OF IMPLIED WARRANTY UNDER CALIFORNIA LAW**
**Cal. Unif. Com. Code §§ 2314-2315**
**(By All Plaintiffs on Behalf of the Nationwide Class)**

104.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

105.     Meazure provided Plaintiffs and all Class Members with an implied warranty the Meazure Exam Platform was merchantable and fit for the ordinary purposes for which they were sold—a platform for taking the CA Bar Exam. However, the Meazure Exam Platform was not fit for its ordinary purpose because it crashed and did not deliver the functionality necessary for test-takers to complete their exams.

106.     Meazure impliedly warranted that its program was of merchantable quality and fit for audio use. This implied warranty included, among other things, a warranty that the testing software was reliable and would allow users to complete their CA Bar Exam when used in a reasonable and foreseeable manner.

107.     Contrary to the applicable implied warranties, the Meazure Exam Platform at the time of sale and thereafter was not fit for its ordinary and intended purpose of providing Plaintiffs and Class Members with reliable test software.

108.     Meazure's actions, as complained of herein, breached the implied warranty that the Meazure Exam Platform were of merchantable quality and fit for such use.

**THIRD CLAIM FOR RELIEF**
**VIOLATIONS OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**
**Cal. Civ. Code § 1790, *et seq.***
**(By All Plaintiffs on Behalf of the Nationwide Class)**

109.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

110.    Plaintiffs bring this claim on behalf of themselves and on behalf of the Nationwide Class Members against Meazure.

111.    At all relevant times, Meazure was the manufacturer, distributor, warrantor and/or seller of the Meazure Exam Platform. Meazure knew or should have known of the specific use for which the the Meazure Exam Platform was purchased.

112.    Meazure provided Plaintiffs and Class Members with an implied warranty that the Meazure Exam Platform was merchantable and fit for the ordinary purposes for which it was sold—a reliable test taking software.

113.    The Meazure Exam Platform, however, is not fit for its ordinary purpose because, *inter alia*, it suffers from an inherent defect at the time of sale that causes it to malfunction. The Meazure Exam Platform crashed and did not serve its purpose as a test platform. The defect renders the Meazure Exam Platform incapable of functioning.

114.    Meazure impliedly warranted that the Meazure Exam Platform was of merchantable quality and fit for such use. This implied warranty included, *inter alia*, a warranty that the Meazure Exam Platform manufactured, supplied, distributed, and/or sold by Meazure was reliable for use as a test-taking software and would not crash.

**FOURTH CLAIM FOR RELIEF**
**VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT ("CLRA")**
**Cal. Civ. Code § 1750, *et seq.***
**(By All Plaintiffs on Behalf of the Nationwide Class)**

115.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

116.    Meazure is a person as that term is defined in California Civil Code § 1761(c).

117.    Plaintiffs and the Class are "consumers" as that term is defined in California Civil Code § 1761(d).

118.    Meazure engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and intentionally concealing from Plaintiffs and Class Members that

the Meazure Exam Platform was not functional. These acts and practices violate, at a minimum, the following sections of the CLRA:

     (a)(5)   Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

     (a)(7)   Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

     (a)(9)   Advertising goods and services with the intent not to sell them as advertised.

119.    Meazure's unfair or deceptive acts or practices occurred repeatedly in Meazure's trade or business and were capable of deceiving a substantial portion of the purchasing public.

120.    Throughout the class period, Meazure knew or should have known that the Meazure Exam Platform was not functional.

121.    In failing to disclose that the Meazure Exam Platform would repeatedly crash and prevent applicants from accessing promised features, Meazure has knowingly and intentionally concealed material facts.

122.    The facts misrepresented, concealed or not disclosed by Meazure to Plaintiffs and the Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to pay to take the February 2025 CA Bar Exam on a computer.

123.    The misrepresented, concealed or omitted facts are also material because they concern central functions of the product (i.e. the ability to complete the test).

124.    Finally, the facts concerning the Meazure Exam Platform that Meazure concealed or omitted from its representations to customers are also material because they contradict affirmative representations about the Meazure Exam Platform.

125.    Had Plaintiffs and the Class known the truth, they would not have paid for the computer exam or would have paid less for it.

126.    Plaintiffs and the other Class members' injuries were proximately caused by Meazure's fraudulent and deceptive business practices.

127.    Plaintiffs had no basis to discover that the Meazure Exam Platform was defective because Meazure falsely represented that the "platform issues" were "resolved."

128.    Plaintiffs are providing the required notice of violation of the CLRA on February 27, 2025 and will amend the Complaint to seek damages at that time. Plaintiffs seek injunctive relief only. Plaintiffs have attached a Declaration of Venue as to their CLRA claims as required under California Civil Code § 1780.

129.    Pursuant to California Civil Code § 1780, Plaintiffs seek an order enjoining Meazure from the unlawful practices described above and a declaration that Meazure's conduct violates the Consumers Legal Remedies Act.

**FIFTH CLAIM FOR RELIEF**
**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW ("UCL")**
**Cal. Bus. & Prof. Code § 17200,** *et seq.*
**(By All Plaintiffs on Behalf of the Nationwide Class)**

130.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

131.    The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

132.    Meazure has engaged in unfair competition and unfair, unlawful or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiffs and the Class Members the defects associated with the Meazure Learning Platform. Meazure knew or reasonably should have known about the problems with the Meazure Learning Platform and should have warned Plaintiffs and the Class Members. Meazure was in a superior position to know the true facts related to the Meazure Learning Platform, and Plaintiffs and Class Members could not reasonably be expected to learn or discover the true facts in advance.

133.    These acts and practices have deceived Plaintiffs and are likely to deceive the public. In failing to disclose the problems with the Meazure Learning Platform, while misrepresenting and suppressing that the problems were "resolved," Meazure violated the UCL, and caused injuries to Plaintiffs and the Class Members. The misrepresentations, omissions, and acts of concealment by

Meazure pertained to information that was material to Plaintiffs and the Class Members, as it would have been to all reasonable consumers. Had Meazure notified Plaintiffs and the Class Members that the Meazure Learning Platform would crash and they would not have access to promised features during the February 2025 Bar Exam, they would not have paid for the test or would have paid less for it. They would have acted differently.

134. The injuries suffered by Plaintiffs and Class Members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and Class Members should have reasonably avoided.

135. Meazure is now offering Plaintiffs and the Class Members the ability to retake the exam at a later date but there is no guarantee that the Meazure Learning Platform will not suffer from the same defects and problems at that time.

136. Meazure's acts and practices are unlawful because they violate California Civil Code §§ 1750 and California Commercial Code § 2313.

137. Plaintiffs seek to enjoin further unlawful, unfair and/or fraudulent acts or practices by Meazure, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

### SIXTH CLAIM FOR RELIEF

### UNJUST ENRICHMENT

### (By All Plaintiffs on Behalf of the Nationwide Class)

138. Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

139. Plaintiffs and the Class Members conferred a benefit on Meazure by paying for the February 2025 CA Bar Exam.

140. Meazure had knowledge that this benefit was conferred upon it.

141. Meazure retained that benefit under circumstances that make it unjust and inequitable for Meazure to retain it without paying Plaintiffs and members of the Classes the value thereof. Specifically, because of its wrongful acts and omissions, Meazure charged more for the Meazure Learning Platform than its true value.

142.    Meazure has been unjustly enriched at the expense of Plaintiffs and the Class and its retention of this benefit under the circumstances would be inequitable.

143.    Plaintiffs seek an order requiring Meazure to make restitution to them and the other members of the Class.

## SEVENTH CLAIM FOR RELIEF

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS UNDER CALIFORNIA LAW

### (By All Plaintiffs on Behalf of the Nationwide Class)

144.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

145.    To demonstrate a claim for negligent infliction of emotional distress, Plaintiffs must show (1) negligent conduct, (2) that the plaintiff suffered emotional distress, and (3) causation.

146.    Meazure engaged in negligent conduct when it offered the Meazure Exam Platform for the February 2025 CA Bar Exam despite its knowledge that the Meazure Exam Platform had serious problems that would prevent it from functioning properly during the exam. Meazure had a duty to test takers, who were forced to use the Meazure Exam Platform to type the exam. That duty included a test platform free of defects that would allow users to take and complete the exam. Meazure breached that duty when instead it provided only a dysfunctional platform that crashed and did not deliver promised features.

147.    Plaintiffs and the Class Members suffered serious emotional distress when they were prevented from taking and in many instances completing the February 2025 CA Bar Exam due to the malfunctioning of the Meazure Exam Platform.

148.    Meazure's negligence caused that emotional distress. Plaintiffs and the Class Members would not have suffered serious emotional distress if the Meazure Exam Platform had functioned as promised.

149.    Plaintiffs and the Class Members are entitled to damages and other relief as available under law for Meazure's negligent infliction of emotional distress.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court:

a. Determine that the claims alleged herein may be maintained as a class action under Federal Rule of Civil Procedure 23, and issue an order certifying one or more Classes as defined above;

b. Appoint all Plaintiffs as representatives of the Nationwide Class;

c. Appoint all Plaintiffs' counsel whose appearance is noticed herein as Class Counsel;

d. Award all actual, general, special, incidental, statutory, punitive, exemplary, and consequential damages and restitution to which Plaintiffs and Class Members are entitled in an amount to be determined at trial and require Meazure to disgorge its ill-gotten gains;

e. Award pre-judgment and post-judgment interest on such monetary relief at the highest legal rate to the extent provided by law;

f. Grant appropriate injunctive and/or declaratory relief;

g. Award reasonable attorneys' fees and costs to the extent provided by law; and

h. Grant such further relief that this Court deems appropriate.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

DATED: February 27, 2025     By: /s/ *Annick M. Persinger*

             Annick M. Persinger (CA Bar No. 272996)
             apersinger@tzlegal.com
             **TYCKO & ZAVAREEI LLP**
             1970 Broadway, Suite 1070
             Oakland, CA 94612
             Telephone: (510) 254-6808

             Katherine M. Aizpuru*
             *kaizpuru@tzlegal.com*
             **TYCKO & ZAVAREEI LLP**
             2000 Pennsylvania Ave NW, Suite 1010
             Washington, DC 20006
             Telephone: (202) 973-0900

             **pro hac vice to be filed*

CLASS ACTION COMPLAINT