Annick M. Persinger (CA Bar No. 272996)
*apersinger@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808

Joseph G. Sauder (*pro hac vice*)
*jgs@sstriallawyers.com*
**SAUDER SCHELKOPF LLC**
1109 Lancaster Avenue
Berwyn, PA 19312
Telephone: (610) 200-0580
Fax: (610) 421-1326

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| *In re ProctorU California Bar Exam Litigation* | No. 4:25-cv-02095-JST<br><br>Hon. Jon S. Tigar<br><br>**PLAINTIFFS' OPPOSITION TO PROCTORU'S MOTION TO DISMISS** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>TABLE OF CONTENTS</u>**

I.      INTRODUCTION ..................................................................................1

II.     FACTUAL BACKGROUND ...................................................................2

        A.     Meazure's Platform Failed Thousands of Applicants During the February
               2025 Bar Exam ...........................................................................2

        B.     Plaintiffs' Experiences ..................................................................4

III.    LEGAL STANDARD ............................................................................7

IV.     ARGUMENT .......................................................................................8

        A.     Plaintiffs' Warranty and CLRA Claims Apply to the Platform............................8

               1.     There Is No Categorical Rule That Warranty Claims Cannot Apply
                      to the Platform Just Because It Is Software (Counts I-III)........................8

               2.     The Meazure Exam Platform Is Also a "Service" or a "Good"
                      Under the CLRA. .............................................................10

                      a.     Meazure's Provision of the Platform Is a Service for
                             Purposes of the CLRA. .........................................10

                      b.     In the Alternative, the Platform May Also Be a "Good"
                             Under the CLRA. ...............................................12

               3.     Plaintiffs and the Class Were Consumers of Meazure's Platform............13

               4.     That the Meazure Exam Platform Was Only Used for Two Days Is
                      Irrelevant. .....................................................................14

               5.     The Argument That Meazure Was the Only Platform Available for
                      Class Members is Inaccurate and Irrelevant. ...............................16

               6.     Plaintiffs Adequately Allege Privity of Contract for Implied
                      Warranty. ......................................................................17

        B.     Plaintiffs Sufficiently Pleaded Their Claims Under the CLRA, UCL, and
               FAL. .........................................................................................18

               1.     Meazure's Representations Are Actionable..............................18

               2.     Meazure's Omissions Are Actionable. ...................................20

               3.     Meazure's Conduct Was Unfair.............................................22

               4.     Meazure's Conduct Was Unlawful.........................................22

        C.     Plaintiffs' Unjust Enrichment Claim Survives. .................................23

V.      CONCLUSION ..................................................................................23

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Allen v. Similasan Corp.*,
   96 F. Supp. 3d 1063 (S.D. Cal. 2015) .................................................................................9, 16

5

6

*In re Apple In-App Purchase Litig.*,
   855 F. Supp. 2d 1030 (N.D. Cal. 2012) ....................................................................................13

7

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015) ....................................................................................................23

8

9

*Balistreri v. Pacifica Police Dept.*,
   901 F.2d 696 (9th Cir. 1988) ......................................................................................................7

10

11

*Banga v. Experian Info. Sols., Inc.*,
   2013 WL 1209946 (N.D. Cal. Mar. 25, 2013)....................................................................10, 14

12

*Bazarganfard v. Club 360 LLC*,
   2023 WL 2354810 (C.D. Cal. Jan. 26, 2023) ...........................................................................22

13

14

*Becerra v. Gen. Motors LLC*,
   241 F. Supp. 3d 1094 (S.D. Cal. 2017)......................................................................................23

15

16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).....................................................................................................................7

17

*Bias v. Wells Fargo & Co.*,
   942 F. Supp. 2d 915 (N.D. Cal. Apr. 25, 2013) ........................................................................20

18

19

*Broomfield v. Craft Brew All., Inc.*,
   2017 WL 3838453 (N.D. Cal. Sept. 1, 2017) ............................................................................23

20

*Challenge Printing Co., Inc. v. Elecs. for Imaging Inc.*,
   500 F. Supp. 3d 952 (N.D. Cal. 2020) ........................................................................................9

21

22

*Claiborne v. Water of Life Cmty. Church*,
   2017 WL 9565337 (C.D. Cal. Aug. 25, 2017)...........................................................................13

23

24

*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008) ...................................................................................................17

25

*Collins v. eMachines, Inc.*,
   134 Cal.Rptr.3d 588 (Cal. Ct. App. 2011) ................................................................................20

26

27

*Corcoran v. CVS Health Corp.*,
   169 F. Supp. 3d 970 (N.D. Cal. 2016) .......................................................................................23

28

*Doe v. Roblox Corp.*,
  602 F. Supp. 3d 1243,1252 ...................................................................17

*Ehrlich v. BMW of N. Am., LLC*,
  801 F. Supp. 2d 908 (C.D. Cal 2010) ....................................................9

*Epic Games, Inc. v. Apple, Inc.*,
  67 F.4th 946 (9th Cir. 2023) ................................................................22

*In re Ford Tailgate Litig.*,
  2015 WL 7571772 (N.D. Cal. Nov. 25, 2015) .....................................14

*Gross v. Symantec Corp.*,
  2012 WL 3116158 (N.D. Cal. July 31, 2012)...............................8, 9, 16

*Hadley v. Kellogg Sales Co.*,
  243 F. Supp. 3d 1074 (N.D. Cal. 2017) ...............................................22

*Haskins v. Symantec Corp.*,
  2013 WL 6234610 (N.D. Cal. Dec. 2, 2013)............................10, 12, 13, 16

*Herron v. Best Buy Co. Inc.*,
  924 F. Supp. 2d 1161 (E.D. Cal. 2013)................................................19

*Ho v. Toyota Motor Corp.*,
  931 F. Supp. 2d 987 (N.D. Cal. 2013) ...........................................21, 22

*Indep. Towers of Wash. v. Wash.*,
  350 F.3d 925 (9th Cir. 2003) ..........................................................10, 15

*In re iPhone Application Litigation*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...............................................12

*Law. v. Homary Int'l Ltd.*,
  2025 WL 1571856 (N.D. Cal. June 2, 2025) ........................................23

*Lazy Y. Ranch Ltd. v. Behrens*,
  546 F.3d 580 (9th Cir. 2008) .................................................................7

*In re MacBook Keyboard Litig.*,
  2019 WL 1765817 (N.D. Cal. Apr. 22, 2019) ..................................21, 22

*Moore v. Mars Petcare US, Inc.*,
  966 F.3d 1007 (9th Cir. 2020) ..............................................................18

*Mosher-Clark v. Gravity Defyer Med. Tech. Corp.*,
  691 F. Supp. 3d 1113 (N.D. Cal. 2023)................................................18

*In re Nexus 6P Prods. Liab. Litig.*,
  293 F. Supp. 3d 888 (N.D. Cal. 2018) ...................................................8

iii

*Niedermeier v. FCA US LLC*,
  543 P.3d 935 (Cal. 2024) .................................................................................13

*Organic Consumers Ass'n v. Sanderson Farms, Inc.*,
  284 F. Supp. 3d 1005 (N.D. Cal. 2018) ...........................................................7

*Osborne v. Subaru of Am. Inc.*,
  243 Cal. Rptr. 815(Cal. Ct. App.1988) ..........................................................17

*Paydar v. Jaguar Land Rover North America, LLC*,
  2019 WL 3253068 (S.D. Cal. Jul. 19, 2019) ..................................................14

*People v. Toomey*,
  157 Cal. App. 3d 1 (1984) ...............................................................................20

*Regueiro v. FCA US, LLC*,
  671 F. Supp. 3d 1085 (C.D. Cal. 2023) ..........................................................22

*Rojas-Lozano v. Google, Inc.*,
  159 F. Supp. 3d 1101 (N.D. Cal. 2016) .....................................................12, 15

*RRX Indus., Inc. v. Lab-Con, Inc.*,
  772 F.2d 543 (9th Cir. 1985) ........................................................................8, 9

*Russ v. Apollo Grp., Inc.*,
  2009 WL 10674112 (C.D. Cal. Sept. 23, 2009) ..............................................13

*Samarney v. Mercedes-Benz USA, LLC*,
  2025 WL 1727034 ...........................................................................................17

*Semegen v. Weidner*,
  780 F.2d 727 (9th Cir. 1985) ...........................................................................18

*Sepanossian v. Nat'l Ready Mixed Concrete Co.*,
  315 Cal.Rptr.3d 373 (Cal. Ct. App. 2023)......................................................22

*Shay v. Apple Inc.*,
  512 F. Supp. 3d 1066 (S.D. Cal. 2021).............................................................20

*Simulados Software, Ltd. v. Photon Infotech Priv., Ltd.*,
  40 F. Supp. 3d 1191 (N.D. Cal. 2014) ..............................................................9

*SoftMan Prods. Co., LLC v. Adobe Sys., Inc.*,
  171 F. Supp. 2d 1075 (C.D. Cal. 2001) ...........................................................16

*In re Sony PS3 Other OS Litigation*,
  551 Fed. App'x 916 (9th Cir. 2014) ...................................................................8

*Stone v. City of Los Angeles*,
  114 Cal. App. 192 (Cal. Ct. App. 1931) ...........................................................17

iv

*In re Tobacco II Cases*,
    46 Cal.4th 298 (2009) ..................................................................................19

*Valdez v. Seidner-Miller, Inc.*,
    245 Cal.Rptr.3d 268 (Cal. Ct. App. 2019) ...................................................13

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ........................................................................19

*Woulfe v. Universal City Studios LLC*,
    2022 WL 18216089 (C.D. Cal. Dec. 20, 2022) ......................................15, 16

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    313 F. Supp. 3d 1113 (N.D. Cal. 2018) ................................................ *passim*

*Zaragoza v. Apple Inc.*,
    2019 WL 1171161 (N.D. Cal. Mar. 13, 2019) .............................................9, 11

**Statutes**

Cal. Civ. Code § 1760 ...........................................................................................13

Cal. Civ. Code § 1761(a) ..............................................................................12, 17

Cal. Civ. Code §§ 1761(a)-(b) .............................................................................10

Cal. Civ. Code § 1761(b) ...............................................................................10, 11

Cal. Civ. Code §§ 1761(d) ....................................................................................13

Cal. Civ. Code § 1770(a) .......................................................................................10

Cal. Civ. Code § 1791(a) ................................................................................9, 17

Cal. Civ. Code § 1792 .............................................................................................9

Cal. Com. Code § 2105(1) ......................................................................................9

Cal. Com. Code § 2106(1) ......................................................................................9

**Rules**

Fed. R. Civ. P. 12(b)(6) ...........................................................................................7

Fed. R. Civ. P. 8(d)(2) ...........................................................................................23

Fed. R. Civ. P. 9(b) ...............................................................................................18

1    I.    **INTRODUCTION**

2         Passing the bar exam is the final hurdle that law school graduates must overcome before

3    they can be admitted to practice law. And the California Bar Exam, offered by the State Bar of

4    California every February and July, is one of the most difficult bar exams in the country. To profit

5    from the privatization of the California Bar Exam, Defendant ProctorU, Inc. d/b/a Meazure

6    Learning ("Meazure") took on the task of administering the February 2025 Bar Examination (the

7    "CA Bar Exam" or "Exam") to thousands of test-takers. These test-takers paid Meazure to use its

8    Meazure Exam Platform ("Platform") to take the Exam. *See* Consolidated Amended Class Action

9    Complaint, ECF No. 46, ¶ 1 ("CAC"). But Meazure failed spectacularly in its task to administer

10   the Exam, delivering a Platform that crashed and malfunctioned, lacked advertised functionalities,

11   and traumatized test-takers around the world who had paid Meazure a fee for a defunct Platform.

12   In addition, to the fees that Plaintiffs and the class members paid for a defunct platform, Plaintiffs

13   and class members like them suffered other damages from Meazure's failure to administer the

14   Exam, including, for example, bar preparation courses, and travel costs related to taking the Exam.

15   Meazure knew its Platform was not up to the task but kept its deficiencies secret until the day of

16   the test. Notably, the State Bar of California has also sued Meazure for its failure to provide what

17   it promised.

18        Now, having failed to deliver the Platform that it advertised test-takers, Meazure seeks to

19   evade accountability. In its motion to dismiss, Meazure asks the Court to throw out Plaintiffs' well-

20   pleaded claims and sweep its misconduct under the rug. Meazure asks the Court to ignore that it

21   provided Plaintiffs and class members with a Platform riddled with glitches, crashes, and other

22   technical problems. Meazure asks the Court to disregard Plaintiffs' experiences encountering

23   significant delays to even enter Meazure's platform, where they endured frequent crashing and

24   freezing. On a timed test, these malfunctions were devastating because they ate into applicants'

25   ability to complete the Exam within the time allotted. Meazure's proctors also failed to help the

26   test-takers and were insufficiently trained to do so. But according to Meazure, Plaintiffs should

27   not be allowed to seek relief even though they paid for a Platform that did not work as Meazure

28   promised.

In California, that is not the law. As described in greater detail herein, each of Meazure's proposed bases for dismissal lacks merit. First, the Consumer Legal Remedies Act ("CLRA") and state warranty law apply to Meazure's platform; contrary to Meazure's arguments, there is no rule that software is exempt from those statutes. Rather, the platform could be considered both a "good" or a "service" under the CLRA, and a "good" under warranty law. Plaintiffs and the class members were also consumers under these important statutory schemes; the educational purpose of the Platform does not mandate otherwise. And, there is no requirement that Plaintiffs' purchase be forever; it is irrelevant that the Exam lasted only two days.

Second, the CLRA, Unfair Competition Law, and False Advertising Law all apply because Meazure made actionable false representations and omissions about its failed platform, and Plaintiffs and the class members relied on those representations and omissions in deciding to take the Exam using the platform. Meazure's conduct was also unfair, deploying anticompetitive behavior with no benefit to consumers. And the well-pleaded CLRA and FAL claims support Plaintiffs' claim under the unlawful prong of the UCL.

Finally, Plaintiffs' unjust enrichment claim survives as well; Meazure's unsupported arguments do not show that a standalone unjust enrichment claim cannot survive.

Plaintiffs request that the Court deny Meazure's Motion.

## II.    FACTUAL BACKGROUND

### A.    Meazure's Platform Failed Thousands of Applicants During the February 2025 Bar Exam

Meazure had one job: to administer the Exam to thousands of test-takers that paid to use its Platform. CAC ¶¶ 1, 40. The Bar Exam is only offered every February and July, and is one of the country's most difficult bar exams. *Id.* ¶ 2. The Bar Exam can be taken using a computer if the test-taker pays a fee. *Id.* ¶ 3. Due to the time advantages over handwriting, it is not surprising that the vast majority of test-takers elect to pay a fee to take the Bar Exam on a computer on their Platform. *Id.* For those who wanted to take the Bar Exam on a computer, they had to use Meazure's Platform because the California Bar identified Meazure as "the vendor responsible for delivering and proctoring the exam." *Id.* ¶¶ 30-32.

1   Meazure promised test-takers that its Platform would provide the following tools during
2   the Bar Exam: "a single-color highlighter, digital notepad, timer, spell check, copy-and-paste
3   functionality (shortcuts such as Ctrl+C and Ctrl+V will be available), strikethrough functionality .
4   . . Text from the question stem or fact pattern can be copied and pasted into the response field.
5   Text written in the digital notepad can also be copied and pasted into the response field." *Id.* ¶ 35.
6   Meazure also promised that, for the performance test portion of the Bar Exam, it would provide "a
7   resource packet in a separate tab with features such as search functionality and bookmarks for easy
8   navigation," "single color highlighter functionality," "text annotation and comment features," "a
9   tagging system to help organize notes," "the ability to copy and paste text from the materials into
10  the response field," and "spell check." *Id.* ¶ 36. Each Plaintiff alleges that they reasonably relied
11  on Meazure's promises about the Platform's utility, and relied on its omissions of the fact that the
12  Platform did not work; and each alleges that but for Meazure's misrepresentations and omissions,
13  they would not have paid to download and use the Platform. *Id.* ¶¶ 75, 84, 93, 101, 111, 122, 133.

14  The Platform did not properly function during the Bar Exam, and the consequences were
15  disastrous for Plaintiffs and the putative class. *Id.* ¶ 50. The Platform crashed over and over, and
16  test-takers that were lucky enough to get into the Platform were unable to submit responses and
17  encountered frequent freezing. *Id.* ¶ 51. Even getting into the Platform the day of the test was met
18  with significant delays. *Id.* Contrary to Meazure's representations, the copy-paste function did not
19  work, so test-takers were not able to paste answers they typed outside the test Platform into the
20  Platform, forcing them to waste valuable time and retype their answers. *Id.* ¶ 54. Other promised
21  features, including the highlighter, notepad, timer, spell check, packets, bookmark navigation,
22  annotation and comments, tagging system, and others all were inaccessible to test-takers. *Id.* The
23  Platform malfunctioned and caused answers to be submitted without approval and well before the
24  end of the session, even before the test-takers had read and attempted to answer the questions. *Id.*
25  ¶ 55. Meazure's proctors, who were supposed to help the test-takers in the event problems were
26  encountered, were wholly unprepared and insufficiently trained to assist. *Id.* ¶ 56.

27  The Bar Exam was an unmitigated disaster, and shortly after the California Bar filed suit
28  against Meazure. *Id.* ¶ 60. Instead of taking ownership of the Platform's failures, Meazure has

blamed an AWS server outage, but public reporting does not show any such outages. *Id.* The California Supreme Court issued a statement noting the "troubling reports of technical failures, delays, and other irregularities in last week's administration" of the Bar Exam and acknowledged the "disappointment, stress, and frustration" experienced by test-takers. *Id.* ¶ 62. The CAC includes numerous complaints from test-takers, lambasting the Platform and Meazure's response. *Id.* ¶ 57.

To make matters worse, Meazure *knew* of the shortcomings of its Platform well in advance of the Bar Exam. *Id.* ¶¶ 41-43. Applications for the Bar Exam were due by November 1, 2024, three months prior to the Bar Exam, and test-takers were required to schedule their exam with Meazure directly to ensure Meazure had a "sufficient number of seats, proctors, and technical support for the exam." *Id.* ¶ 38. In advance of the Exam, applicants reported site reservation cancellations with no explanation, conflicting information about test rules and deadlines, assignments to Exam sites hours from their homes, glitches in the Platform, and issues completing the mock Exam. *Id.* ¶ 41. Meazure not only knew of these "technical issues" that "distracted applicants and created confusion," but it also represented to the California Bar and the test-takers that it would fix the issues prior to the Bar Exam. *Id.* ¶ 42. Two days before the Bar Exam, Meazure's Platform was still inadequate, and the California Bar acknowledged "receiving reports of issues in the Meazure Learning Platform affecting the ability to type into the answer window, use backspace/delete, and cut and paste. **Meazure has informed us that these issues have been resolved**." *Id.* ¶ 47 (emphasis added). This representation was false and, as a result, thousands of test-takers were walking into a disaster they could not reasonably foresee or avoid.

**B.    Plaintiffs' Experiences**

Plaintiffs all registered for the February 2025 Bar Exam and opted to take the Exam using computers, all of which met the technical requirements for the Exam Platform, and each expended a significant amount of time and money preparing for the Bar Exam. *Id.* ¶¶ 64-65, 76-77, 85-86, 95-96, 102-103, 113-114, 124-125. In deciding to take the Exam using the Platform and pay money to use it, each Plaintiff alleges that they relied on Meazure's promises and omissions about its functionality. *Id.* ¶¶ 66, 75, 77, 84, 87, 93, 97, 101, 104, 111, 115, 122, 133. The Platform did not function as promised, and each Plaintiff encountered significant problems with it. ¶ 67-73, 78-82,

88-90, 98, 105-108, 116-119, 126-130.

Plaintiff Perjanik experienced Platform crashes immediately. *Id.* ¶ 68. She was not able to access the first essay until ***four hours*** after her allotted start time, and it took her six hours to complete one written essay because the Platform repeatedly crashed. *Id.* ¶ 69 (emphasis added). She contacted her proctors for assistance, who told her to contact Meazure's tech support, but tech support told her to contact her proctors, putting her in an endless loop. *Id.* The stress was overwhelming, and she was in tears because she was not able to finish the required essays within the allotted time because of the malfunctioning Platform. *Id.* ¶ 70. On the second day, she experienced the same difficulties. *Id.* ¶ 72. She could not access highlighter, notepad, copy-paste function, timer, spell check, packets, bookmark navigation, annotation and comment feature, tagging system, and other promised features. *Id.* ¶ 73. Having relied on Meazure's promises and omissions in deciding to pay to take the Exam using the Platform, Perjanik was injured by Meazure's failed Platform. *Id.* ¶¶ 74-75.

Plaintiff Tulsidas experienced constant lag and freezes when she was trying to type her essay answers, and she was unable to use the copy-paste function. *Id.* ¶ 79. During the third essay, the Platform completely froze, preventing her from adding her response. *Id.* The proctor was unable to assist her, so she was forced to switch her laptop during the middle of the Exam, costing her precious time. *Id*. On the second day, the Platform crashed again, causing a 40-minute delay, as well as another crash later on during the exam. *Id.* ¶ 81. She could not access the highlighter, notepad, copy-paste function, timer, spell check, packets, bookmark navigation, annotation and comment feature, tagging system, and other promised features. *Id.* ¶ 82. Having relied on Meazure's promises and omissions in deciding to pay to take the Exam using the Platform, Tulsidas was injured by Meazure's failed Platform. *Id.* ¶¶ 83-84.

Plaintiff McClain was unable to use the copy/paste function during the performance test. *Id.* ¶ 88. He was also disrupted because the failure of the Platform caused those around him to complain while he was trying to focus and write his answers. *Id.* ¶ 89. During the second day, he was unable to log in to the Platform, causing a 40-minute delay. *Id.* ¶ 90. Meazure's proctors were yelling at other test-takers, causing additional distractions. *Id.* At the 105-minute mark, his

1    computer displayed a prompt that his multiple-choice answers were not being saved and then the

2    Platform shut down while he was still working. *Id.* Having relied on Meazure's promises and

3    omissions in deciding to pay to take the Exam using the Platform, McClain was injured by

4    Meazure's failed Platform. *Id.* ¶¶ 92-93. He also later learned that he had not passed the Exam.

5    Plaintiff McDowell experienced significant technical issues. *Id.* ¶ 98. These included

6    significant lag time and the inability to use the copy/paste function. *Id.* When she attempted to log

7    in the second day, she received a message that stated the website was under "heavy load" and told

8    her to "[p]lease try again later." *Id.* She was unable to work on the Bar Exam for an extended

9    period of time. *Id.* In addition, she lost a significant amount of time navigating and attempting to

10   troubleshoot the issues she was experiencing. *Id.* ¶ 99. Having relied on Meazure's promises and

11   omissions in deciding to pay to take the Exam using the Platform, McDowell was injured by

12   Meazure's failed Platform. *Id.* ¶¶ 100-101.

13   Plaintiff Ayoub experienced multiple crashes and malfunctions with the Platform. *Id.* ¶

14   106. The copy/paste function did not work, which cost her significant time as she had to scroll up,

15   memorize portions of the prompt, and then retype it into her answer. *Id.* During the multiple-choice

16   section, she was kicked out multiple times and while she was kicked out, the timer kept running.

17   *Id.* ¶ 107. She attempted to get help from the proctors, but they were slow to respond and unable

18   to help. *Id.* The proctors also interrupted her multiple times to have her adjust her camera as the

19   Platform falsely reported that she was not within the frame. *Id.* ¶ 108. As a result, she was forced

20   to rush to complete the multiple-choice section, which caused her stress and anxiety. *Id.* ¶¶ 107,

21   109. Having relied on Meazure's promises and omissions in deciding to pay to take the Exam

22   using the Platform, Ayoub was injured by Meazure's failed Platform. *Id.* ¶¶ 110-111. She later

23   learned she had not passed the Exam. *Id.* ¶ 112.

24   Plaintiff Sukkary encountered multiple software malfunctions that severely disrupted his

25   attempt to complete the Bar Exam. *Id.* ¶ 117. The copy/paste function did not work and he

26   experienced a persistent lag when typing, which negatively impacted his ability to write efficiently,

27   requiring frequent corrections. *Id.* During the multiple-choice portion, the Platform logged him out

28   for seven minutes, and he was unable to highlight text upon logging back in, and then was kicked

1    back out. *Id.* ¶ 118. The proctors conducted ID checks *after* the Exam began, further disrupting

2    him, and he was even stopped mid-essay to have his ID rechecked, despite being cleared to start

3    earlier. *Id.* During the second day, he was repeatedly logged out of the Platform, and received a

4    message stating that the system failure was caused by "high traffic." *Id.* ¶ 119. All of these

5    malfunctions and disruptions caused him stress and anxiety as he rushed to complete the Bar Exam.

6    *Id.* ¶ 120. Having relied on Meazure's promises and omissions in deciding to pay to take the Exam

7    using the Platform, Sukkary was injured by Meazure's failed Platform. *Id.* ¶¶ 121-122. He later

8    learned he had not passed. *Id.* ¶ 123.

9          Plaintiff Cole also encountered multiple software malfunctions that severely disrupted her

10    ability to complete the Bar Exam. *Id.* ¶ 127. The copy/paste function was inoperable, which

11    significantly delayed her ability to transfer and edit text within her responses. *Id.* During the essay

12    portion, the Platform would not display her typed answers and otherwise lagged. *Id.* ¶ 128. On the

13    second day, the Platform repeatedly went black and displayed error messages that her answers

14    were not being submitted. *Id.* ¶ 129. Ms. Cole suffered stress and anxiety caused by these

15    malfunctions and disruptions. *Id.* ¶ 131. Having relied on Meazure's promises and omissions in

16    deciding to pay to take the Exam using the Platform, Perjanik was injured by Meazure's failed

17    Platform. *Id.* ¶¶ 132-133. She later learned she had not passed. *Id.* ¶ 134.

18    **III.**    **LEGAL STANDARD**

19          A complaint should not be dismissed under Federal Rule of Civil Procedure 12(b)(6) unless

20    there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under

21    a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988);

22    *see also Organic Consumers Ass'n v. Sanderson Farms, Inc*., 284 F. Supp. 3d 1005, 1010 (N.D.

23    Cal. 2018). In considering a motion to dismiss for failure to state a claim, the court should accept

24    as true all allegations in the complaint and construe the pleadings in the light most favorable to the

25    plaintiff. *Lazy Y. Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). To survive a motion

26    to dismiss, a plaintiff must only allege enough facts to "raise a right to relief above the speculative

27    level, on the assumption that all allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*,

28    550 U.S. 544, 555 (2007) (internal quotations omitted).

IV.    **ARGUMENT**

   A.    **Plaintiffs' Warranty and CLRA Claims Apply to the Platform.**

   Meazure seemingly attempts to argue that Plaintiffs' claims for Breach of Express Warranty (Claim I), Breach of Implied Warranty (Claim II), Violations of the Song-Beverly Consumer Warranty Act (Claim III), and Violations of the California Consumer Legal Remedies Act ("CLRA") (Claim IV) should all be dismissed. Defendant first argues that Plaintiffs' CLRA claim should be dismissed because its Exam Platform is not a "good" for purposes of warranty law and not a "good" or "service" under the CLRA because it is an intangible item. Meazure is wrong as software like Meazure's platform is a good covered by the CCC, and either a "good" or a "service" for purposes of the CLRA. Defendant's second and third arguments are that Plaintiffs' Claims I-IV should all be dismissed because Defendant's Exam Platform is "licensed for one-time use" rather than for "on going use," and that Plaintiff and Class Members were required to purchase access to the Platform to be able to take the Exam. All of these arguments fail.

   1.    **There Is No Categorical Rule That Warranty Claims Cannot Apply to the Platform Just Because It Is Software (Counts I-III).**

   Contrary to Meazure's argument, Def. Br. (ECF No. 56) at 5-8, there is no rule that warranty claims cannot apply to software like the Platform. And, Meazure cites no case to support its argument. On the contrary, under California law, consumers may seek a remedy when providers of intangible products breach their express or implied warranties regarding those products. *See, e.g.*, *In re Sony PS3 Other OS Litigation*, 551 Fed. App'x 916, 919 (9th Cir. 2014) (analyzing breach of warranty claim regarding operating software); *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 935-47 (N.D. Cal. 2018) (analyzing breach of warranty claims regarding software); *Gross v. Symantec Corp.*, 2012 WL 3116158, at *8-9 (N.D. Cal. July 31, 2012) (rejecting argument that software downloaded from the internet could not be subject to breach of warranty claims); *cf. RRX Indus., Inc. v. Lab-Con, Inc.*, 772 F.2d 543, 546-47 (9th Cir. 1985) (applying a case-by-case analysis to software packages and computer programs).

   Indeed, significantly, "Courts have generally found that mass-produced, standardized, or generally available software, even with modifications and ancillary services included in the

agreement, is a good that is covered by the UCC." *Zaragoza v. Apple Inc.*, 2019 WL 1171161, at *6 (N.D. Cal. Mar. 13, 2019). *See also Challenge Printing Co., Inc. v. Elecs. for Imaging Inc.*, 500 F. Supp. 3d 952, 960 (N.D. Cal. 2020) (citing cases). Thus, the Platform is a "good" for purposes of warranty claims under the corresponding provisions of the CCC and Song-Beverly Act.

**First**, with regard to the CCC, the Exam Platform qualifies as a "good" for purposes of Plaintiffs' breach of implied and express warranty claims. *See* Cal. Com. Code § 2106(1) (emphasis added); Cal. Com. Code § 2105(1) (defining "goods"). Courts determine whether software is a "good" under the CCC using the predominant factor test, where courts look to the "essence of the agreement" on a case-by-case basis to decide how to characterize the transaction. *Challenge Printing Co., Inc.,* 500 F. Supp. 3d at 960 (citing *Gross*, 2012 WL 3116158, at *8 and *RRX Indus., Inc.*, 772 F.2d at 546). Applying this test, courts find "strong policy reasons favoring the application of the [C]CC" to software include "the advantages of applying the UCC to software transactions (namely uniformity on a range of questions) and the importance of software to the commercial world." *Simulados Software, Ltd. v. Photon Infotech Priv., Ltd.*, 40 F. Supp. 3d 1191, 1200 (N.D. Cal. 2014). Given that the importance of the software transactions at issue related to the Exam Platform and the uniformity of the software at issue that was the standardized, mass-produced software that Meazure provides to many customers, CAC ¶ 4, it qualifies as a "good" pursuant to the CCC. *See id.*

**Second**, the Exam Platform also qualifies as a "consumer good" under the Song-Beverly Act. Song-Beverly provides that "every sale of *consumer goods* that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code § 1792 (emphasis added). Thereunder "consumer goods" are "any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, except for clothing and consumables . . . . include[ing] new and used assistive devices sold at retail." Cal. Civ. Code § 1791(a). Notably, the Song-Beverly Act was intended to provide *greater* protections and remedies for consumers than the Commercial Code." *Allen v. Similasan Corp.*, 96 F. Supp. 3d 1063, 1075 (S.D. Cal. 2015) (quoting *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 921 (C.D. Cal 2010)). Thus, it stands to reason that

since courts routinely find that software like Meazure's qualifies as a "good" under the CCC, the Exam Platform at issue here also qualifies as a consumer good under the Song-Beverly Act.

> **2.    The Meazure Exam Platform Is Also a "Service" or a "Good" Under the CLRA.[1]**

Similar to its argument with respect to the warranty claims, Meazure argues that its software is not a good or a service for purposes of the CLRA claims, which prohibits certain unfair methods of competition and deceptive practices "in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." ECF No. 56 at 5. Contrary to Meazure's proposition, Plaintiff may seek recovery for Meazure's unfair methods of competition because its Exam Platform is either a "service" or, alternatively, is a "good" under the CLRA. Cal. Civ. Code § 1770(a).

> **a.    Meazure's Provision of the Platform Is a Service for Purposes of the CLRA.**

For purposes of the CLRA, "services" are defined as "work, labor, and services for other than a commercial business use, including services furnished in connection with the sale or repair of goods." *Id.* § 1761(b). Plaintiffs sufficiently allege that the Platform is a service under the CLRA because it provides "proctoring and support workforce" along with the Platform's services and operates and maintains the Platform on an ongoing basis. CAC ¶¶ 4, 32-33.

To determine whether provision of a software is provision of a service for purposes of the CLRA, courts "analyze the particular facts at issue to determine whether the software at issue falls within the definition of 'service.'" *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1141 (N.D. Cal. 2018). Provision of a software can be considered a service in situations where it continually updates and or is ongoing. *Id.* at 1141-42; *see Haskins v. Symantec*

---

[1] Defendant's argument regarding whether its Exam Platform is a "service" under the CLRA is arguably waived because it only cites cases that state that software is not a good, even though tangibility is only a requirement for "goods" but not "services." *See* ECF No. 56 at 6-7; *see also* Cal. Civ. Code §§ 1761(a)-(b). Where a party makes a conclusory argument and does not cite any authority or provide any legal analysis supporting it, the argument lacks merit. *Banga v. Experian Info. Sols., Inc.*, 2013 WL 1209946, at *2 (N.D. Cal. Mar. 25, 2013) (citing *Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003)).

1  *Corp.*, 2013 WL 6234610, at *9 n.9 (N.D. Cal. Dec. 2, 2013) (explaining that "there are good
2  reasons to consider antivirus software to be a 'service' under the CLRA, since it continually
3  updates and runs regular virus checking.").

4      The court's decision *Yahoo!* is instructive. There, the court found that Yahoo's software
5  offerings constituted services because users access a continually maintained, web-based platform,
6  and Yahoo's ongoing operation and maintenance fit the CLRA's definition of "'service,' i.e.,
7  'work, labor, and services for other than a commercial or business use.'" *Id*. at 1142 (quoting Cal.
8  Civ. Code § 1761(b)). The court further reasoned that this finding is reinforced by the fact that
9  Yahoo's own Terms of Service defines "'Yahoo! *Services*' as including 'communications tools,
10  forums, shopping *services*, search *services*, personalized content and branded programming.'" *Id*.
11  (emphasis in original).

12      Likewise, here, Plaintiffs allege that Meazure not only provided the Exam Platform but
13  also promised to provide a "proctoring and support workforce" and sufficient server capacity for
14  at least 9,000 California bar examinees. CAC ¶ 4. Moreover, in the October 4, 2024 Term Sheet,
15  Meazure represented that it would reserve enough capacity to administer the February 2025
16  California Bar Exam to all examinees and deliver competent exam administration services,
17  including a "fully operational" platform capable of "uninterrupted service levels." *Id.* (citing
18  Exhibit B). The provision of a proctoring and support workforce to back up the Platform alone is
19  sufficient labor for Meazure's offerings to qualify as services under the CLRA. The Exam Platform
20  at issue here also qualifies as a service because, similar to *Yahoo!*, it is a web-based platform that
21  Meazure continually operates and maintains as evidenced, in part, by the fact that it explicitly
22  offered to arrange to reserve sufficient server space to prevent any issues with administering the
23  Exam on the Exam Platform. *In re Yahoo!*, 313 F. Supp. 3d at 1142. *See also*, *e.g.*, *Zaragoza*, 2019
24  WL 1171161, at *5 (finding that plaintiffs sufficiently alleged that defendant's "Season Pass
25  service that offers all current and future episodes for the season" of a TV show was "service" under
26  the CLRA).

27      While Meazure relies on *Ferrington*, in *Yahoo!* Judge Koh, who also decided *Ferrington*,
28  explained, that her statement in *Ferrington* was not intended to convey that software never

1  constitutes a service as in some ongoing situations the provision of software may be a service. 313

2  F. Supp. 3d at 1141–42.

3       Meazure's reliance on *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101 (N.D. Cal.

4  2016), and *In re iPhone Application Litigation*, 844 F. Supp. 2d 1040, 1070 (N.D. Cal. 2012) are

5  also misplaced. Meazure mischaracterizes the court's holding in *Rojas-Lozano*—its decision that

6  ReCAPTCHA was not a service turned on the fact that it "does not provide users with any kind of

7  *ongoing* service," not because ReCAPTCHA is only available online. *Rojas-Lozano*, 159 F. Supp.

8  3d at 1116 (emphasis added). Again, differently, here, Meazure operates and maintains the Exam

9  Platform on an ongoing basis and provides proctoring and support workforce throughout the time

10 a consumer uses the Platform. CAC ¶ 4. And *In re iPhone Application Litigation* (also written by

11 Judge Koh, who again repudiated the concept of a black-and-white rule in her later *Yahoo!*

12 decision) had to do with free iPhone applications—not services that consumers paid money for.

13 844 F. Supp. 2d at 1070.

14      Meazure's argument that provision of its Platform was not a service for purposes of the

15 CLRA should be rejected.

16              **b.    In the Alternative, the Platform May Also Be a "Good" Under
                       the CLRA.**

17      Alternatively, if Meazure's provision of its Platform is not a "service" then it is a "good."

18 The CLRA defines "goods," in relevant part, as "tangible chattels bought or leased for use

19 primarily for personal, family, or household purposes." Cal. Civ. Code § 1761(a). Meazure

20 misstates the law to the extent it asserts there is a categorical rule that software cannot be a "good"

21 under the CLRA.

22      Though it is not always the case, software may qualify as a "good." *See, e.g.*, *Haskins v.

23 Symantec Corp.*, 2013 WL 6234610, at *9 (N.D. Cal. Dec. 2, 2013) (analyzing whether computer

24 software could be a "good"). As the Court explained in *Haskins*, "no matter how the software is

25 delivered, it works a physical change on a physical hard drive," possessing "corporeal form in a

26 way that credit or insurance inherently cannot." *Id.* (ultimately declining to decide whether

27 software only available on the internet could be a "good"). *See also In re Yahoo!*, 313 F. Supp. 3d

28

---

12

at 1141 (noting that *Ferrington* "did not hold that software can never constitute a 'good'"); *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1037-39 (N.D. Cal. 2012) (denying motion to dismiss CLRA claims involving iPhone applications). Here, some plaintiffs had to download the Platform onto their own computers, working a physical change on the hard drive, like in *Haskins*. CAC ¶¶ 66, 102, 113. And the others used computers *provided by Meazure*, which Meazure cannot reasonably argue are not tangible goods. *Id.* ¶¶ 77, 87. Applying the CLRA liberally, consistent with its consumer protection purpose, *Haskins*, 2013 WL 6234610 at *10, the Court may also find that the Platform was a "good."

### 3.   Plaintiffs and the Class Were Consumers of Meazure's Platform.

Failing to cite *any* authority, Defendant argues that Plaintiffs claims under the Song-Beverly Consumer Warranty Act and the California Consumer Legal Remedies Act ("CLRA") should be dismissed because Meazure's Platform was used for "commercial purposes." ECF No. 56 at 10. The Court should reject Meazure's narrow reading of Plaintiffs' claims.

The California legislature instructed that the CLRA is to be "liberally construed." *Valdez v. Seidner-Miller, Inc.*, 245 Cal. Rptr. 3d 268, 276 (Cal. Ct. App. 2019); Cal. Civ. Code § 1760. *See also Niedermeier v. FCA US LLC*, 543 P.3d 935, 952 (Cal. 2024) (reasoning that the Song-Beverly Act should be construed liberally). The CLRA applies to any contract "undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer," defined to mean "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." Cal. Civ. Code §§ 1761(d); 1770(a).

Educational services are covered under the CLRA and Song-Beverly Act. *See Russ v. Apollo Grp., Inc.,* 2009 WL 10674112, at *3 (C.D. Cal. Sept. 23, 2009) (reasoning that defendants had not provided sufficient authority to omit education from the definition of "services" under the CLRA); *see also Claiborne v. Water of Life Cmty. Church*, 2017 WL 9565337 at *10 (C.D. Cal. Aug. 25, 2017) (reasoning that education is a "service" for the purposes of the CLRA). Consumer goods may have multiple purposes. *Davis v. Clients on Demand, LLC,* is instructive. 2025 WL 2238724, at *4 (C.D. Cal. 2025). There, the court found that a plaintiff who purchased a coaching

---
13

platform to expand his business was a consumer, because he purchased the program with his personal credit card and also had non-business reasons to provide mentoring services to troubled teens. *Id.* Relevant to the court's analysis was the plaintiff's desire to serve people, as well as obtain money and lifestyle benefits even if there was a business purpose underlying his purchase. *Id.* ("Plaintiff responded: 'I – provide a service . . . to provide mentoring, counseling, coaching, understanding to help a parent that has a troubled teen…. That's my heart's desire…'"). The bar exam is a similarly personal endeavor for most—most people take the bar examination and become lawyers to help people and for a myriad of profoundly personal reasons.

California courts have also held that consumer goods that may also have business purposes does not warrant dismissal on the pleadings. *See In re Ford Tailgate Litig.,* 2015 WL 7571772, at *10 (N.D. Cal. Nov. 25, 2015) (finding at the summary judgment stage even though a car was used for business purposes, "there is sufficient evidence from which a 'fair-minded jury' could conclude that Morelli purchased the car 'primarily for personal, family, or household purposes'. . . ."); *see also Davis,* 2025 WL 2238724 at *4 ("At this [the class certification] juncture, the Court is satisfied that Plaintiff has provided evidence allowing a reasonable factfinder to conclude that Plaintiff is a "consumer" under the CLRA."). At minimum, whether Plaintiffs are consumers under the CLRA and Song-Beverly Act is a question of fact. *Cf. Davis,* 2025 WL 223872 at *4; *In re Ford Tailgate Litig.,* 2015 WL 7571772, at *10; *Paydar v. Jaguar Land Rover North America, LLC*, 2019 WL 3253068 at *5 (S.D. Cal. Jul. 19, 2019). Thus, at a minimum, whether the bar examination has commercial applications for Plaintiffs and the putative class should not be decided until after discovery.

### 4. That the Meazure Exam Platform Was Only Used for Two Days Is Irrelevant.

Meazure next argues that "[t]he single-use nature of the platform precludes the platform from being considered a good or service under the CCC, the Song-Beverly Act, and the CLRA." ECF No. 56 at 8. Meazure's brief is devoid of any authorities supporting this argument as it pertains to the CCC and the Song-Beverly Act, thereby making the basis of this argument entirely unclear. Accordingly, these arguments can be rejected as unsupported. *See, e.g., Banga*, 2013 WL

14

1  1209946, at *2 (rejecting defendant's "unsupported" and "conclusory argument" because
2  defendant "did not cite any authority or provide any legal analysis") (citing *Indep. Towers of*
3  *Wash.*, 350 F.3d at 929).

4        Meazure's argument as it pertains to the CLRA fails on the merits. Meazure
5  misunderstands the court's holding in *Rojas-Lozano* a second time. In analyzing the particular
6  facts at issue there, the court noted that ReCAPTCHA is "a one-time use software program used
7  as a gate-keeper to Internet sites" to illustrate that ongoing maintenance of its system would not
8  be for the benefit of users. *Rojas-Lozano*, 159 F. Supp. 3d at 1116. It does not logically follow that
9  every single software that is only used once cannot ever be a service. Rather, as previously stated,
10  a court must analyze the particular facts at issue to determine whether the software at issue falls
11  within the definition of service under the CLRA. *In re Yahoo!*, 313 F. Supp. 3d at 1141-42. Here,
12  the Platform was used over the course of the two-day Exam and all proctoring, maintenance, and
13  update services provided during that time were for the sole benefit of Plaintiffs and the class. There
14  is no similarity between the Platform and a ReCAPTCHA.

15        Meazure also misconstrues *Woulfe v. Universal City Studios LLC*, 2022 WL 18216089
16  (C.D. Cal. Dec. 20, 2022). Contrary to Meazure's contention, the *Woulfe* court's finding that the
17  "limited-time license to stream a digital copy of [the movie] *Yesterday*" on Amazon was not a
18  service did not turn on the fact that the plaintiff's access to the movie was only for a "limited-
19  time." *Id.* at *15. Rather, this holding turned on the fact that the CLRA claims related to the
20  underlying content of the movie as opposed to Amazon's provision of video streaming services.
21  *Id.* The *Woulfe* court also explained that "the limited-time license could be interpreted as a
22  provision of video streaming services," which it implied would qualify as a "service" pursuant to
23  the CLRA. *Id.*

24        Here, unlike *Woulfe*, Plaintiffs' claims do not pertain to the content contained within the
25  Platform, such as the substance of the Exam. Plaintiffs' claims relate to Meazure's failure to
26  provide adequate services that it promised to provide along with the Exam Platform, such as:
27  maintaining a Platform that does not have technical issues; competently administering the Exam;
28  the reservation of sufficient server space to administer the Bar Exam; and, a proctor and support

1   workforce that could help resolve any issues relating to the Exam Platform efficiently and

2   effectively. CAC ¶¶ 4, 9-11, 43, 46, 56, 69, 119. Thus, the circumstances here are consistent with

3   those that the *Woulfe* court said would be sufficient to qualify as a service under the CLRA.

4          Meazure's attempt to distinguish *Haskins* is unpersuasive, too. In finding that the antivirus

5   software at issue in *Haskins* could be considered a service, the Court pointed to the fact that the

6   defendant there "continually update[d] and r[a]n regular virus checking" as an example of how the

7   defendant operates and maintains the software on an ongoing basis. *Haskins*, 2013 WL 6234610,

8   at *9 n.9. Operating and maintaining a software is one way in which a software can readily qualify

9   as a service under the CLRA. *In re Yahoo!*, 313 F. Supp. 3d at 1141-42. Like the software at issue

10  in *Haskins*, Meazure operates and maintains the Exam Platform, for the reasons discussed above.

11  Accordingly, Meazure's attempt to distinguish *Haskins* from the instant matter fails.

12          **5.    The Argument That Meazure Was the Only Platform Available for Class Members is Inaccurate and Irrelevant.**

13          Meazure also makes the remarkable argument that because Plaintiffs "were required by the

14  State Bar to use its chosen vendor," they were not protected in their transaction by California law.

15  ECF No. 56 at 7. This argument is factually inaccurate—Plaintiffs had the choice between taking

16  the Exam either by using a computer or by hand. CAC ¶ 3. As evidenced by the lack of authority

17  for this statement, Meazure again has it wrong.

18          A consumer need not choose between the particular good at issue and alternative options

19  for a purchase to qualify as a "sale" under the CCC, Song-Beverly Act, and the CLRA. It is settled

20  law that under the CCC, software is commonly sold and not licensed, regardless of how the

21  transaction is labeled. *See SoftMan Prods. Co., LLC v. Adobe Sys., Inc.*, 171 F. Supp. 2d 1075,

22  1084-85 (C.D. Cal. 2001) (recognizing that a number of courts have held that the sale of software

23  is the sale of a good within the meaning of the UCC); *see also Gross*, 2012 WL 3116158, at *9

24  (finding sale of software is a "sale" of a good under the CCC). Given that Plaintiffs and the Class

25  paid to use Meazure's Exam Platform, Plaintiff sufficiently alleged that the transaction was a sale

26  under the CCC.

27          Furthermore, as previously mentioned, the Song-Beverly Act was "intended to provide

28

greater protections and remedies for consumers than the Commercial Code." *Allen*, 96 F. Supp. 3d at 1075 (S.D. Cal. 2015). Thus, it stands to reason that since the transaction at issue here qualifies as a "sale" under the CCC, it also qualifies as a sale under the Song-Berly Act.

Finally, Meazure does not explain why Plaintiffs' use of the Platform cannot be considered a "lease" (and/or a "use" for purposes of the Song-Berly claims). Its arguments hinge entirely on the incorrect assertion that Plaintiffs were required to purchase the Platform forever. Yet in the same breath, Meazure concedes a sale is not required. ECF No. 56 at 7 (recognizing a lease is sufficient). *See, e.g.*, Cal. Civ. Code § 1761(a) (consumer good includes those that are "bought or leased"); *Id.* § 1791(a) ("used, bought, or leased"); *Samarney v. Mercedes-Benz USA, LLC*, 2025 WL 1727034, at *3-6 (analyzing breach of warranty claims related to leased car). It is well settled that "[t]o 'lease' is to transfer [an asset], for a term specified therein, from the lessor to the lessee." *Stone v. City of Los Angeles*, 114 Cal. App. 192, 199 (Cal. Ct. App. 1931). At a minimum, Plaintiffs' access to the Platform was a lease, and Meazure does not argue or show otherwise. *See also In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d at 1142 (allowing use of web-based platform to survive dismissal); *Doe v. Roblox Corp.*, 602 F. Supp. 3d 1243,1252, 1264 (same).

### 6.    Plaintiffs Adequately Allege Privity of Contract for Implied Warranty.

Meazure claims that Plaintiffs' implied warranty claim fails because of a lack of privity. ECF No. 56 at 9. "A buyer and seller stand in privity if they are in adjoining links of the distribution chain." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (citing *Osborne v. Subaru of Am. Inc.*, 243 Cal. Rptr. 815, 821 n.6 (Cal. Ct. App.1988)). Defendant's argument makes no sense because there is vertical privity between Plaintiffs and Meazure in that Plaintiffs obtained the Platform directly from Meazure, who created it. They either downloaded the software directly from Meazure or used laptops that Meazure provided. CAC ¶ 30. Though they registered for the Exam with the State Bar, there is no intervening "retailer" with regard to the Platform. *Cf. Clemens*, 534 F.3d at1023 (finding lack of vertical privity where consumer purchased vehicle from a third-party retailer and not the manufacturer).

**B.    Plaintiffs Sufficiently Pleaded Their Claims Under the CLRA, UCL, and FAL.**

Meazure attacks Plaintiffs' CLRA, UCL, and FAL claims on their merits, but Meazure's arguments continue to fall short.

**1.    Meazure's Representations Are Actionable.**

To state a claim under the CLRA, UCL, and FAL, a plaintiff must provide "notice of the particular misconduct which is alleged to constitute the fraud charged so that [the defendant] can defend against the charge and not just deny it has done anything wrong." *Mosher-Clark v. Gravity Defyer Med. Tech. Corp.*, 691 F. Supp. 3d 1113, 1119 (N.D. Cal. 2023) (citing *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)); *see also Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 (9th Cir. 2020) (stating that CLRA, UCL, and FAL claims must allege "the basic premise of what is false or misleading about a statement and why it is false").

Meazure contends that Plaintiffs have not alleged it made any actionable statements. These arguments contradict the pleadings, which describe in considerable detail the representations that Meazure made about the Platform. *See supra* Part II. The Complaint also alleges that each Plaintiff specifically "relied upon Meazure's promises about its Platform's utility, namely that Meazure would allow [them] to complete the exam and upload [their] responses timely and provide . . . promised features." CAC ¶¶ 75, 84, 93, 101, 111, 122, 133. Each Plaintiff also alleges that but for Meazure's misrepresentations, they would not have paid money for the Platform. *E.g.*, *id.* ¶¶ 75, 84, 93, 101, 111, 122, 133, 187. The Complaint states how those representations were made, where they were made, when they were made, and that Plaintiffs relied upon them. The Complaint even attaches some of the materials that made these promises. *See*, *e.g.*, ECF Nos. 46-1, 46-2. Taken together, these allegations satisfy the pleading standard under Rule 9(b) because they provide the requisite details about the "time, place, and content of representations." *Mosher-Clark*, 691 F. Supp. 3d at 1119. The Court may therefore easily dispose of Meazure's undeveloped argument, made in passing, that Rule 9(b) is not satisfied.

Meazure's specific attacks on the representations alleged also fail. Meazure challenges the Exam Administration Representation is not actionable, asserting this misrepresentation is not actionable because it made promises to the State Bar. The Exam Administration Representation

refers to the implied representation that by accepting the laptop fee and providing permission to use the Platform, Meazure "represented to examinees that they would have the opportunity to take a competently administered exam." CAC ¶¶ 40, 175, 187. Meazure invites the Court to construe the pleadings against Plaintiffs. Instead, as Meazure recognizes, a business's affirmative representations (such as the representations that Meazure made about the Platform's functionalities) can also imply representations that are, themselves, actionable. *See, e.g.*, *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939-40 (9th Cir. 2008) (label depicting fruits was actionable because consumers would reasonably infer the presence of fruit). Here, the Complaint alleges that Meazure offered a practice exam and corresponded with test takers to prepare for use of the Platform on Exam day. CAC ¶¶ 34-37. Meazure does not contend, nor could it, that Plaintiffs and the class could not infer from its representations about the Platform's functionality that the platform would, in fact, function.

And the misrepresentations about the unavailable functionalities are also actionable. Meazure promised that numerous functions, including highlighter, notepad, copy-paste, timer, spell check, packets, bookmark navigation, annotation and comment features, tagging systems, and other features would be present for the Exam. CAC ¶¶ 35-36. After collecting money from Plaintiffs and the rest of the class, Meazure deployed a Platform that did not include the promised features.

Meazure argues its misrepresentations were not "material" because the alternative would have been to take the Exam by hand. Meazure misstates the standard for materiality under California law. Materiality means that a reasonable consumer would attach importance to its existence or nonexistence. As such, "materiality is generally a question of fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable [person] would have been influenced by it." *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1174 (E.D. Cal. 2013) (quoting *In re Tobacco II Cases*, 46 Cal.4th 298, 327 (2009)). Importantly, and contrary to Meazure's arguments, a plaintiff is not required to show that fraudulent misrepresentations were the "only cause," the "sole or even the predominant or decisive factor influencing his conduct." *In re Tobacco II Cases*, 46 Cal.4th at 326. "It is enough that the

1    representation has played a substantial part, and so had been a substantial factor, in influencing his

2    decision." *Id.* at 326. Given the stakes of the Exam, the promised features and functionality of the

3    Platform is not "so obviously unimportant" that the complaint should be dismissed. At a minimum,

4    whether test-takers would have preferred a handwritten test-taking experience to the disaster that

5    Meazure provided is not appropriate for resolution on a motion to dismiss. *See, e.g.*, *Bias v. Wells*

6    *Fargo & Co.*, 942 F. Supp. 2d 915, 932 n.9 (N.D. Cal. Apr. 25, 2013) ("[T]he question of whether

7    a misrepresentation is material is generally one of fact unless no reasonable jury could find that a

8    person would be influenced by the representation or nondisclosure.").

9          Finally, Meazure argues in passing that many of the misrepresentations were

10    communicated to Plaintiffs and the class members by way of the State Bar. Meazure cannot escape

11    liability just because it laundered its lies through the State Bar. Two days before the Exam,

12    Meazure's Platform was still inadequate, and the California Bar acknowledged "receiving reports

13    of issues in the Meazure Learning Platform affecting the ability to type into the answer window,

14    use backspace/delete, and cut and paste. ***Meazure has informed us that these issues have been***

15    ***resolved***." CAC ¶ 47 (emphasis added). The operative complaint sufficiently establishes that

16    Meazure exercised control over and participation in the misrepresentations, even if some of

17    Meazure's misrepresentations were disseminated to consumers by way of the State Bar

18    communications. *See, e.g.*, *People v. Toomey*, 157 Cal. App. 3d 1, 15 (1984) ("[I]f the evidence

19    establishes defendant's participation in the unlawful practices, either directly or by aiding and

20    abetting the principal, liability . . . can be imposed."); *accord Shay v. Apple Inc.*, 512 F. Supp. 3d

21    1066, 1072 (S.D. Cal. 2021) (rejecting challenge to UCL claims because third party was involved

22    in the scheme since the defendant also engaged in "affirmative acts and concealment"). Meazure's

23    unsupported argument fails.

24              **2.    Meazure's Omissions Are Actionable.**

25          Omissions are actionable under the CLRA, UCL, and FAL. *See, e.g.*, *Collins v. eMachines,*

26    *Inc.*, 134 Cal. Rptr. 3d 588, 593 (Cal. Ct. App. 2011) ("These deceptive practices proscribed in the

27    CLRA include the concealment or suppression of material facts."). A failure to disclose a fact can

28    constitute actionable fraud where, *inter alia*, the defendant has exclusive knowledge of material

facts not known or reasonably accessible to the plaintiff, and when the defendant actively conceals a material fact from the plaintiff. *Id.* Similarly, where an omission goes to the core function of a product, an omission is actionable even if there is no safety issue. *See In re MacBook Keyboard Litig.*, 2019 WL 1765817, at *5-7 (N.D. Cal. Apr. 22, 2019) (finding a duty to disclose where defendant had sole knowledge of facts and omission was central to the product's function).

Meazure's first challenge to the omissions claim fails for the same reasons as its challenge to the representation claims. Where the CAC alleges that Meazure was directly involved in the misconduct, it can be liable under the UCL even if it never made statements directly to them. *See supra* Part IV. B.1.

Meazure's argument that the CAC fails to plead a duty to disclose is so cursory as to be functionally waived. And it is also wrong. The CAC contains facts sufficient to support at least three reasons why Meazure had a duty: (1) Meazure had exclusive knowledge of its inadequate Platform, which Plaintiffs and the class members had no way to know; (2) Meazure actively concealed its knowledge from Plaintiffs and the class members; and (3) its omissions related to the Platform's core function of Exam provision. CAC ¶ 187 (alleging that Meazure's failure to disclose the problems with the Meazure Learning Platform were material because had Plaintiffs known that the Platform would crash and they would not have access to the promised features, they would not have paid the laptop fee or would have paid less for it); *id.* ¶¶ 9, 33 (alleging that Meazure had exclusive control over the design, maintenance, and management of the Bar Exam through the Meazure Learning Platform); *id.* ¶¶ 41-46 (alleging that Meazure was aware of technical problems with the Exam Platform before the February 2025 Bar Exam yet failed to address the issues before Exam Day). *See In re MacBook Keyboard Litig.*, 2019 WL 1765817, at *5-7 (N.D. Cal. Apr. 22, 2019) (finding a duty to disclose where defendant had sole knowledge of actual facts, and the omission was central to the product's function); *Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 998 (N.D. Cal. 2013) (duty to disclose where defendant conducted its own testing and learned of defects that the public could not have known about).

Meazure's omissions are also actionable for the independent reason that they are contrary to Meazure's express statements. Meazure represented to test-takers that its Platform would

21

1    include specific functionalities. CAC ¶¶ 35-36. Meazure represented to test-takers that they would

2    have the opportunity to take a competently administered Exam, *id.* ¶ 40, but its promises were

3    untrue. Worse, Meazure actively concealed these facts from the Bar and Plaintiffs, and instead lied

4    that it could and would fix them by test day. *Id.* ¶¶ 41-49. *See Ho*, 931 F. Supp. 2d at 998-99

5    (finding omissions actionable where defendant actively concealed facts). Plaintiffs sufficiently

6    allege that "had the omitted information been disclosed, one would have been aware of it and

7    behaved differently. *In re MacBook Keyboard Litig.*, 2019 WL 1765817, at \*7.

8                  **3.    Meazure's Conduct Was Unfair.**

9          Plaintiffs have adequately pleaded that Meazure's conduct violated the "unfair" prong of

10   the UCL. "[T]o support a finding of unfairness to consumers, a court uses the balancing test, which

11   weighs the utility of the defendant's conduct against the gravity of harm to the alleged victim."

12   *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 1000 (9th Cir. 2023). Here, Plaintiffs allege that

13   Meazure, the admittedly monopoly vendor for the State Bar, used its position of power to exploit

14   Plaintiffs and the class members into paying for a failed Platform. The injuries Plaintiffs suffered

15   as a result of the crashing Platform were not reasonably avoidable because Meazure concealed the

16   truth from them. CAC ¶ 188. Providing a defunct Platform on the day of the Exam does not offer

17   countervailing benefits to consumers. Alleging the defendant "took advantage of [its] position of

18   perceived power in order to deceive Plaintiffs and the [c]lass members" is sufficient to state a

19   claim. *Bazarganfard v. Club 360 LLC*, 2023 WL 2354810, at \*14 (C.D. Cal. Jan. 26, 2023).

20         In addition, whether a practice is unfair is a fact-intensive inquiry not conducive to a

21   resolution on a motion to dismiss. *See Regueiro v. FCA US, LLC*, 671 F. Supp. 3d 1085, 1098

22   (C.D. Cal. 2023); *Sepanossian v. Nat'l Ready Mixed Concrete Co.*, 315 Cal. Rptr. 3d 373, 380

23   (Cal. Ct. App. 2023).

24                 **4.    Meazure's Conduct Was Unlawful.**

25         The unlawful prong "borrows violations of other laws and treats them as unlawful practices

26   that the unfair competition law makes independently actionable." *Hadley v. Kellogg Sales Co.*,

27   243 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017) (cleaned up). Meazure claims that Plaintiffs'

28   allegations regarding their violations of the underlying laws are insufficient. Not so. Plaintiffs have

1    sufficiently pleaded their CLRA and FAL claims. Thus, Plaintiffs have successfully pled their

2    UCL claim under the unlawful prong.

3         **C.    Plaintiffs' Unjust Enrichment Claim Survives.**

4         Defendant avers that Plaintiffs' unjust enrichment claim should be dismissed because it

5    does not exist as a standalone cause of action. ECF No. 56 at 18. Not so. Defendant's position has

6    been expressly rejected by the Ninth Circuit and subsequent courts in California because "a court

7    may construe the cause of action [for unjust enrichment] as a quasi-contract claim seeking

8    restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quotations

9    omitted); *see, e.g.*, *Broomfield v. Craft Brew All., Inc.*, 2017 WL 3838453, at *13 (N.D. Cal. Sept.

10   1, 2017) (following *Astiana* and refusing to dismiss unjust enrichment claim); *see also Law. v.*

11   *Homary Int'l Ltd.*, 2025 WL 1571856, at *6–7 (N.D. Cal. June 2, 2025) (same). Moreover, it

12   should be noted that even if Plaintiffs' unjust enrichment were duplicative of remedies available

13   through Plaintiffs' other claims, that would "not [be] grounds for dismiss[al]." *Astiana*, 783 F.3d

14   at 762-63 (citing Rule 8(d)(2), which provides: "a party may set out 2 or more statements of a

15   claim or defense alternatively or hypothetically, either in a single count or defense or in separate

16   ones"); *see also Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 989 (N.D. Cal. 2016)

17   (following *Astiana* to reject duplicative remedies argument as it is "no longer viable at the motion

18   to dismiss stage in this Circuit"); *Becerra v. Gen. Motors LLC*, 241 F. Supp. 3d 1094, 1117 (S.D.

19   Cal. 2017) ("8(d) allows parties to plead claims in the alternative or in an inconsistent manner, and

20   courts in this Circuit have allowed unjust enrichment and breach of contract claims to proceed

21   simultaneously in one action."). Accordingly, Plaintiffs' unjust enrichment claim survives.

22   **V.    <u>CONCLUSION</u>**

23        Meazure should be held accountable for its failures, misrepresentations, and material

24   omissions to Plaintiffs and the class members. Its greed, sloppiness, and dishonesty made an

25   experience that was already stressful and fraught into a traumatizing nightmare at significant

26   financial cost to the Plaintiffs and the class members. Plaintiffs respectfully request that the Court

27

28

1    deny the motion to dismiss.[2]

2

3    Dated: November 10, 2025                    Respectfully Submitted,

4                                               /s/ Annick M. Persinger
                                               Annick M. Persinger (CA Bar No. 272996)
5                                              Lavanya Prabhakar (CA Bar No. 358175)
                                               apersinger@tzlegal.com
6                                              lprabhakar@tzlegal.com
7                                              **TYCKO & ZAVAREEI LLP**
                                               1970 Broadway, Suite 1070
8                                              Oakland, CA 94612
                                               Telephone: (510) 254-6808
9

10                                             Katherine M. Aizpuru (*pro hac vice*)
                                               kaizpuru@tzlegal.com
11                                             **TYCKO & ZAVAREEI LLP**
                                               2000 Pennsylvania Ave NW, Suite 1010
12                                             Washington, DC 20006
                                               Telephone: (202) 973-0900
13

14                                             Joseph G. Sauder (*pro hac vice*)
                                               Joseph B. Kenney*
15                                             jgs@sstriallawyers.com
                                               jbk@sstriallawyers.com
16                                             **SAUDER SCHELKOPF LLC**
                                               1109 Lancaster Avenue
17                                             Berwyn, PA 19312
                                               Telephone: (610) 200-0580
18                                             Fax: (610) 421-1326

19
                                               *Interim Co-Lead Counsel for Plaintiffs and the*
20                                             *Proposed Class*

21                                             *pro hac vice to be filed*

22

23

24

25

26    _____

27

28    [2] Plaintiffs consent to the dismissal of Count VII.

---

24

1

<u>**CERTIFICATE OF SERVICE**</u>

2      I hereby certify that on the below date, I caused to be served a true and correct copy of the

3 foregoing, which was served on all counsel of record using the Court's CM/ECF system.

4

5 Dated: November 10, 2025               <u>*/s/ Annick M. Persinger*</u>
                                          Annick M. Persinger
6                                         **TYCKO & ZAVAREEI LLP**

7                                         *Counsel for Plaintiffs and the Proposed Class*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS
*In re ProctorU California Bar Exam Litigation.*, No. 4:25-cv-02095-JST